PEARL COHEN AND HERMAN COHEN, PLAINTIFFS-APPELLANTS, v. SAM KAMINETSKY AND SARAH KAMINETSKY, DEFENDANTS-RESPONDENTS.

Argued November 6, 1961—Decided December 18, 1961.

*Mr. Gerald B. Goldberg* argued the cause for appellants (*Mr. Jacob M. Goldberg,* attorney).

*Mr. Gordon L. Kent* argued the cause for respondents (*Messrs. Budd, Larner & Kent,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J.   This case arose out of an automobile accident.   Mrs. Pearl Cohen, Mrs. Sarah Kaminetsky, and Mrs. Sally Elson were members of a swimming club.   While at the club they discussed returning in the evening for the scheduled entertainment.   They agreed to check with each other later in the day and to arrange for transportation.

Mrs. Kaminetsky elected to drive.   She picked up Mrs. Elson and then drove to the home of Mrs. Cohen.   As Mrs. Cohen attempted to enter the car, it suddenly moved backward, the open door striking her and inflicting injuries for which she sought recovery.   Her husband sued *per quod,* and Mr. Kaminetsky, owner of the car, was made a codefendant.

The central issue as to liability is the status of Mrs. Cohen and accordingly the nature of the duty Mrs. Kaminetsky owed her.   As submitted to the jury, the answer depended upon nice factual inquiries.   They were whether Mrs. Cohen was a pedestrian rather than a passenger, and, if she was a passenger, whether she was such by "invitation" of Mrs. Kaminetsky.   As to the first, Mrs. Cohen said she was partly in the car when the accident occurred, whereas Mrs. Kaminetsky insisted she was still on the sidewalk. As to invitation, the testimony was uniform that there had been the discussion mentioned above in which it was understood that one car would be used, it being of no great moment which it would be.   There was some conflict as to ensuing details, the testimony most favorable for the defense being that Mrs. Elson, taking it for granted that Mrs. Kaminetsky was willing to pick up Mrs. Cohen, simply suggested that course, to which Mrs. Kaminetsky readily assented.   They were all going to the same place and Mrs. Cohen lived on the way.

The trial court charged that (1) if Mrs. Cohen was a pedestrian, Mrs. Kaminetsky owed her a duty of due care; and (2) if Mrs. Cohen was a passenger upon the invitation of Mrs. Kaminetsky, the same standard applied, but if she had not been thus invited, she could recover only for injuries wantonly or willfully inflicted. Since the injuries were not wantonly or willfully inflicted and Mrs. Kaminetsky's negligence seems scarcely debatable, it is fair to assume the jury found Mrs. Cohen was essentially in the car, *i. e.,* a passenger, but not upon Mrs. Kaminetsky's invitation. The trial court's charge comported with precedents binding upon it. *Myers v. Sauer,* 116 *N. J. L.* 254 (*E. & A.* 1936), 117 *N. J. L.* 144 (*E. & A.* 1936); *Sheehan v. McGowan,* 49 *N. J. Super.* 1 (*App. Div.* 1958).

This factual pattern readily invites reconsideration of the distinction originated in *Lutvin v. Dopkus,* 94 *N. J. L.* 64 (*Sup. Ct.* 1920), between a "licensee" and an "invitee," anchored to the circumstance whether the passenger requested the ride or was invited upon the initiative of the driver.

The advent of the automobile presented new problems for judicial solution. One was the duty of the host to his social guest. To arrive at a suitable rule, courts looked for an analogue. Massachusetts found the gratuitous bailment to be the correct one, and viewing the accommodation as being for the benefit of the guest, it held the host could be liable only for gross negligence. *Massaletti v. Fitzroy,* 228 *Mass.* 487, 118 *N. E.* 168, *L. R. A.* 1918c, 264 (*Sup. Jud. Ct.* 1917). This view attracted some slight support, but the great majority of the courts refused thus to equate the hazard to life or limb with the risk of damage to mere property and settled upon the conventional standard of ordinary negligence. In the late 20's and 30's there was a legislative movement away from the doctrine of due care, statutes adopted in 27 states prescribing various bases of liability ranging from gross negligence to wanton or willful injury. For a review, see 2 *Harper and James,*

*Torts* § 16.15, *pp.* 950, *et seq.* (1956); *Prosser, Torts* § 77, *p.* 450 (*2d ed.* 1955).

Our State, however, struck out in another direction in *Lutvin v. Dopkus, supra* (94 *N. J. L.* 64). It differentiated between a guest who asked for the ride and the guest who was invited by the host to come along; the former was entitled to recover only for injuries wantonly or willfully inflicted, whereas the latter could recover for ordinary negligence. So far as we know, this distinction is uniquely our own, no other state embracing it by case law or statute, and a number of jurisdictions expressly refusing to follow *Lutvin*. *Munson v. Rupker,* 96 *Ind. App.* 15, 148 *N. E.* 169 (*App. Ct.* 1925); *Black v. Goldweber,* 172 *Ark.* 862, 291 *S. W.* 76 (*Sup. Ct.* 1927); *Holdhusen v. Schaible,* 60 *S. D.* 275, 244 *N. W.* 392 (*Sup. Ct.* 1932); *Robinson v. Leonard,* 100 *Vt.* 1, 134 *A.* 706 (*Sup. Ct.* 1926); see also *Galloway v. Perkins,* 198 *Ala.* 658, 73 *So.* 956 (*Sup. Ct.* 1916); *Green v. Maddox,* 168 *Miss.* 171, 149 *So.* 882, 151 *So.* 160 (*Sup. Ct.* 1933); *Mitchell v. Raymond,* 181 *Wis.* 591, 195 *N. W.* 855 (*Sup. Ct.* 1923). Thus in all other states social guests, whether passengers upon their or the hosts' initiative, are treated alike.

In *Lutvin* the former Supreme Court found an appropriate analogy in the law governing the liability of the owner of real property to his social guest, and the rule took hold when the Court of Errors and Appeals accepted that precedent in *Faggioni v. Weiss,* 99 *N. J. L.* 157 (*E. & A.* 1923). Actually the analogue did not support *Lutvin*. First, nothing in our cases dealing with the landowner's liability suggests a difference between the social guest who precipitates the invitation and the one who comes upon the initiative of the host. All social guests are treated alike. Secondly, at least after *Lutvin,* it became clear that the social guest upon real property could recover for negligence in affirmative acts or conduct of the host, as distinguished from the condition of the premises themselves. *Berger v. Shapiro,* 30 *N. J.* 89, 97 (1959); *Cwik v.*

*Zylstra,* 58 *N. J. Super.* 29, 34 (*App. Div.* 1959); *Barbarisi v. Caruso,* 47 *N. J. Super.* 125 (*App. Div.* 1957); *Mistretta v. Alessi,* 45 *N. J. Super.* 176 (*App. Div.* 1957); *Cropanese v. Martinez,* 35 *N. J. Super.* 118 (*App. Div.* 1955); *Lordi v. Spiotta,* 133 *N. J. L.* 581 (*Sup. Ct.* 1946).

It is immediately clear that if the analogy were faithfully followed with respect to vehicles, it would be a rare case in which ordinary negligence would not suffice, for injuries are seldom due solely to the condition of the automobile. Even when a defect plays a part, still, the car having been put in motion, any resemblance to an accident due to a fixed condition upon real estate disappears. Indeed, if there ought to be liability for ordinary negligence in this field, it would be quite unrewarding to carve out an exception for the isolated case in which the condition of the vehicle might be thought to be the sole effective force.

Thus the history of the subject reveals a misapplication of a rule of law once thought to be a suitable source for solution of automobile litigation. If *Lutvin* were nonetheless sound, the error in its birth would be but an interesting story. But we can find no reason for the distinction it drew. In an age of automobile travel, transportation of friends and friends of friends and of comparative strangers is quite routine. We do not understand why it should matter whether the driver extends an invitation on his own or accedes to the request of another. Neither the host nor his guest would suspect that if an accident occurred, their rights and liabilities would turn upon who suggested the ride.

Indeed, the rule of *Lutvin* is so artificial that frequently the witnesses cannot truthfully say who initiated the arrangement. The subject is so casual a matter and the distinction in *Lutvin* is so irrelevant that the details of the conversations pass unnoted. And even if the event can be reliably reconstructed, one may well wonder in many situations by what process of reasoning the trier of the

facts can find whether the invitation stemmed from the initiative of the host or was precipitated by the passenger or a third person. The facts of this case suffice to reveal the difficulty. And if the initiative can be ascertained, still the distinction is but a play of words. When a person asks for a ride, he asks to be invited, and if the response is favorable, he enters the car upon the invitation of the driver, no different in kind or quality than if the driver advanced it without someone else's prompting.

Thus we find nothing to support the distinction of *Lutvin*, and if the issue were a new one, we would reject it without hesitation. The sole argument in favor of retaining the doctrine is that it has been the law of this State since that case was decided. To this must be added the uncomfortable fact that but a few years ago an attack upon it failed, albeit by the vote of a bare majority of this court. *Lippman v. Ostrum*, 22 *N. J.* 14 (1956).

We think it fair to say that in *Lippman v. Ostrum* the rule of *Lutvin* was not sustained because of intrinsic merit. It was followed for other reasons.

The first reason assigned was (22 *N. J.*, at *p.* 22):

"Such is the long-established rule in New Jersey, a natural and compelling juridical accommodation of a principle basic to our law of liability in damages for tortious wrongs in analogous relationships and circumstances, whether they concern land uses or other media of transportation involving the use of personal property, settled law amenable only to the legislative power. Indeed, how could it be otherwise analogized, consistent with essential principle? Its rejection now, by this court, would constitute judicial intrusion upon the lawmaking function."

If by this it was meant that *Lutvin* accords with a suitable analogue, we would have to disagree. We have already shown it does not square with the rule applicable to the social guest on real property, and we know of no other doctrine with which it could mesh.

Insofar as the quotation states that a change by the judiciary would intrude upon the legislative prerogative, we have since *Lippman* demonstrated the historical power and duty of the judiciary to correct its own errors. *Collopy*

*v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29 (1958); *Smith v. Brennan,* 31 *N. J.* 353 (1960); *Faber v. Creswick,* 31 *N. J.* 234 (1959).

The duty to revise or reject prior decisional law does not suggest that judges of one day are wiser than their predecessors. Rather it is a responsibility made inevitable by the nature of the judicial process. When a judge is confronted with a new social or economic realty, he must play the prophet. The case before him must be decided, and whatever his answer, it becomes a precedent. The very newness of the problem denies him a reservoir of experience. When he thus speaks for the future, he can but hope that time will verify his prophecy. If it does not, the power which generated the rule must be exerted to correct it. It would be idle for the judiciary to claim infallibility.

The judiciary was created to serve all generations in the context in which they live. To give an unjust answer only because a court erred in its prediction would throttle that purpose. Stability, of course, is an abiding need, and a court must weigh whether a correction of error would be unfair to those who relied upon precedent. But since we are confident Mrs. Kaminetsky did not stop for Mrs. Cohen or relax her care at the wheel upon the security of *Lutvin* or *Lippman,* we must feel free to give the answer we believe just.

The second reason advanced in *Lippman* (22 *N. J.,* at *p.* 24) is that the Legislature had expressed itself upon the topic. Reference was made to the provisions of the Unsatisfied Claim and Judgment Fund Law, *L.* 1952, *c.* 174, which excluded protection for "a guest occupant riding in a motor vehicle owned or operated by the judgment debtor," *N. J. S. A.* 39:6–70. Although the statute dealt only with claims arising against unknown or uninsured motorists, *Lippman* found in the exclusion a concurrence in the philosophy underlying the "guest" statutes then operative in 27 states. That act actually went beyond the "guest" statutes in that it denied protection no matter how flagrant the conduct might be, but nonetheless it did tend to suggest

the Legislature embraced some of the thinking of those statutes. At any rate, the significant fact now before us is that since *Lippman* our Legislature has deleted the exclusion, effective January 15, 1962. *L.* 1961, *c.* 19. Although it cannot be said the Legislature thereby unequivocally disagreed with *Lutvin,* it surely did not accept it as it might have, if so minded, by continuing an exclusion of a guest who asks for the ride. At any rate, there is now removed from the scene the legislative expression upon which the majority in *Lippman* relied.

■ We accordingly conclude that the duty of the host to the social guest is the same whether the host initiated the invitation or the guest or another on his behalf asked for the ride.

The remaining question is whether that duty should be the usual one to exercise reasonable care or whether something more than ordinary negligence should be required as is done by the "guest" statutes referred to above.

We see no reason why the host should be less vigilant for his own guest than he must be for a guest in another car. The duty to exercise reasonable care is as appropriate in the one situation as in the other.

It sometimes is suggested that the recipient of a favor should be more grateful. The short answer is that the favor is hardly worth the price exacted from the injured in thus absolving the wrongdoer. Moreover, favors may be reciprocated and it would not do to make a case turn upon an exploration of the total relationship between the parties. And if the event is an isolated one, still it is not always easy to ascertain whether the benefit ran only to the passenger.

Nor are we impressed with the further thought that the prospect of collusion should lead to a different standard of care. We see no inevitable connection between the subjects. It is the regular business of the courts to find the truth. We ought not deny what should be due the many for fear that the judicial process cannot weed out the spurious claims of a few.

Hence we cannot embrace the thinking which presumably was accepted by the "guest" statutes. We do not believe they represent an equitable solution, and we may fairly claim support in our Legislature's amendment of the Unsatisfied Claim and Judgment Fund Law to which we have already referred. We note that recently the United States Supreme Court, dealing with a kindred problem, refused to import into admiralty law the invitee-licensee distinction. *Kermarec v. Compagnie Generale Transatlantique,* 358 *U. S.* 625, 630, 79 *S. Ct.* 406, 3 *L. Ed.* 2d 550, 554 (1959).

Hence we conclude that a driver owes his passenger a duty to exercise reasonable care whether the driver initiated the invitation or the passenger or someone on his behalf asked for the ride.

■ We should add a word about another subject. In the pretrial order defendants stated they "deny any negligence and contend that the accident was unavoidable." The triable issues were stated to include "negligence" and "unavoidable accident." A claim of "unavoidable accident" is not here a separate defense within *R. R.* 4:8–3 since of course it is nothing but a denial of negligence. If the injuries were caused by defendant's negligence, they were not "unavoidable"; due care would have avoided them. We doubt the jury was misled, but to charge a single issue as if it were two different ones has a potential for confusion. See *Meistrich v. Casino Arena Attractions, Inc.,* 31 *N. J.* 44 (1959). We see no need to refer at all to "unavoidability," but there can be no harm if it is made plain that it means nothing more than a denial of negligence.

The judgment is reversed and a new trial ordered.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For affirmance*—None.