540 P.2d 238

**Elizabeth McGEEHAN, Petitioner,**

**v.**

**Thomas B. BUNCH, Respondent.**

**No. 10223.**

Supreme Court of New Mexico.

Sept. 23, 1975.

Horn, Schowers & Ginsburg, Albuquerque, for petitioner.

Keleher & McLeod, William K. Stratvert, Albuquerque, for respondent.

## OPINION

MONTOYA, Justice.

On August 1, 1973, petitioner Elizabeth McGeehan (plaintiff) filed suit in the District Court of Bernalillo County alleging that she was injured on March 3, 1972, while a guest in the car of respondent Thomas B. Bunch (defendant). The complaint alleged that defendant failed to use due and ordinary care while operating his vehicle on State Road 90 in Grant County, New Mexico. Defendant moved to dismiss on the ground that the facts as stated in the complaint fell within the terms of New Mexico's "guest statute," § 64–24–1, N.M. S.A., 1953 (Repl.Vol. 9, Pt. 2, 1972). In a memorandum of law submitted in opposition to defendant's motion to dismiss, plaintiff attacked the constitutionality of the guest statute as violative of N.M.Const. art. II, § 18, and U.S.Const. amend. XIV, in that it arbitrarily and unreasonably discriminates between paying and nonpaying guests. The motion to dismiss was heard and granted by the district court on November 27, 1973.

On December 19, 1973, plaintiff filed a notice of appeal, and on October 23, 1974, the Court of Appeals issued its order affirming the trial court. Plaintiff then filed for a writ of certiorari. The writ was subsequently granted by this court on December 5, 1974.

This appeal is limited to the determination of one narrow issue, whether or not our guest statute by creating a distinction between paying and nonpaying automobile guests violates the equal protection clause of the federal and state constitutions.

Section 64–24–1, supra, as presently in force, reads as follows:

"No person transported by the owner * * * of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner * * * for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner * * * or caused by his heedlessness or his reckless disregard of the rights of others."

This statute, although modified by case law, was enacted in 1935.

The United States Supreme Court considered the constitutionality of the Connecticut guest statute, after which the New Mexico statute was copied verbatim, in *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Although the equal protection clause was involved, the matter then under consideration was different from what we are faced with here. The Court held the statute to be constitutional and stated (280 U.S. at 123, 50 S.Ct. at 59, 74 L.Ed. at 225):

"It is said that the vice in the statute is not that it distinguishes between passengers who pay and those who do not, but between gratuitous passengers in automobiles and those in other classes of vehicles. But it is not so evident that no grounds exist for the distinction that we can say *a priori* that the classification is one forbidden as without basis, and arbitrary. See *State of Ohio ex rel. Clarke v. Deckebach,* 274 U.S. 392, 397, 47 S.Ct. 630, 71 L.Ed. 1115."

The constitutionality of our guest statute has been considered four previous times. *Cortez v. Martinez,* 79 N.M. 506, 445 P.2d

383 (1968); *Gallegos v. Wallace,* 74 N.M. 760, 398 P.2d 982 (1964); *Mwijage v. Kipkemei,* 85 N.M. 360, 512 P.2d 688 (Ct.App. 1973); *Romero v. Tilton,* 78 N.M. 696, 437 P.2d 157 (Ct.App.1967).

In deciding the constitutionality of a statute in general, it must be recognized initially that:

> "We have repeatedly held that every presumption is to be indulged in favor of the validity and regularity of legislative enactments. (Citations omitted.) A statute will not be declared unconstitutional unless the court is satisfied beyond all reasonable doubt that the legislature went outside the constitution in enacting the challenged legislation. (Citations omitted.)"

*City of Raton v. Sproule,* 78 N.M. 138, 142, 429 P.2d 336, 340 (1967). In keeping with the traditional self-restraint of this court regarding constitutional challenges, we refuse to inquire into "the wisdom, the policy or the justness of an act of the legislature * * *." *Gruschus v. Bureau of Revenue,* 74 N.M. 775, 777, 399 P.2d 105, 106 (1965). It is not within the realm of this court to question the social or economic policies underlying legislative acts. Only when this court is satisfied that the legislature has wandered outside the confines of the constitution by enacting unequal, oppressive and arbitrary legislation will such legislation be struck down.

In particular, when a statute is challenged on the basis of the equal protection clause, specific tests are applicable. Where legislation involves "suspect classifications" (race, etc.) or touches "fundamental interests" (right to vote), it is subject to strict scrutiny. See *Serrano v. Priest,* 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971). But where, as here, no such concerns are present, legislation is subject to a more liberal critique. As stated by this court in *Gruschus v. Bureau of Revenue,* supra (74 N.M. at 778, 399 P.2d at 107):

> "* * *. Equal protection does not prohibit classification for legislative purposes, provided that there is a rational and natural basis therefor, that it is based on a substantial difference between those to whom it does and those to whom it does not apply, and that it is so framed as to embrace equally all who may be in like circumstances and situations. (Citations omitted.)"

The current federal constitutional standard was enunciated by the United States Supreme Court in *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225, 299 (1971):

> "* * * [T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. (Citations omitted.) The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' (Citations omitted.)"

See also *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

It seems that from the above cases the Supreme Court of the United States is prepared to acknowledge the existence of substantial claims under the equal protection clause on minimum rationality grounds and has, to some extent, blurred the distinction between strict and minimal scrutiny that characterized the old equal protection formulation by the courts. See generally Gunther, The Supreme Court, 1971 Term: Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a

Newer Equal Protection, 86 Harv.L.Rev. 1 (1972–73).

In *McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222, 228 (1964), the Court stated:

"Judicial inquiry under the Equal Protection Clause, therefore, does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose— * * *."

In applying this test to our guest statute, it is first necessary to determine the statute's objective. The traditional justifications for the passage of such statutes found in court decisions and academic commentaries are that they (1) promote hospitality, by excluding one who gratuitously provides a ride from suit based on ordinary negligence, and (2) prevent collusion which could result from an admission of liability by an insured driver in order to allow recovery by a family member or friend. *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974); 2 Harper & James, Law of Torts § 16.15 at 961 (1956).

The same objects and purposes of the guest statute were discussed and recognized in the reasoning by our Court of Appeals, which led to the decision holding it constitutional under the equal protection and due process clauses of the U.S. and N.M.Const., *Romero v. Tilton,* supra. There the issue of constitutionality was raised as to the distinction made in the statute providing (78 N.M. at 699, 437 P.2d at 160):

" * * * protection from liability accorded by our guest statute to the 'owner' of the motor vehicle, while denying the same protection to a non-owner operator, or other non-owners responsible for the operation of the vehicle, * * *."

We do not believe that the protection of hospitality justifies the statute's classification. This "hospitality" rationale asserts that the classification scheme merely provides a higher standard of care for those who pay than for those who do not. This principle has been recognized by the courts in the case of common carriers. But this same reasoning cannot reasonably be applied to guests in passenger cars. There is no principle in our general legal scheme which dictates that one must pay for the right of protection from negligently inflicted injury. See *Brown v. Merlo,* supra; *Henry v. Bauder,* supra. The classification fails not because it draws some distinction between paying and nonpaying guests, but because it penalizes nonpaying guests by depriving them completely of protection from ordinary negligence. The loss of life or limb of a guest should not become less worthy of compensation merely because he has not paid for his ride. No matter how laudable the State's interest in promoting hospitality, it is irrational to reward generosity by allowing the host to abandon ordinary care and by denying to nonpaying guests the common law remedy for negligently inflicted injury. We are unable to discern how the denial of recovery to guests will serve the cause of hospitality.

Also, we can find no rationale for withdrawing protection from a nonpaying guest in the host's vehicle, while at the same time providing full protection to guests in other vehicles even though they paid no compensation. As the Supreme Court of New Jersey has stated:

"We see no reason why the host should be less vigilant for his own guest than he must be for a guest in another car. The duty to exercise reasonable care is as appropriate in the one situation as in the other."

*Cohen v. Kaminetsky,* 36 N.J. 276, 283, 176 A.2d 483, 487 (1961).

The other line of reasoning supporting the hospitality rationale is that to sue one's host for negligence is the epitome

of ingratitude. If the doctrine of preventing the ungrateful act of a negligence lawsuit against a hospitable host ever had any rational basis, it has been worn away by changing circumstances. When our guest statute was passed in 1935, it was evidently considered inequitable to place the burden of negligently caused injury of nonpaying guests upon the individual host. Today, this burden would in most cases no longer fall upon the hospitable host, but on his insurance company and in turn on the general motoring public. Liability insurance is widespread throughout the State. The trend today is to require mandatory public liability insurance coverage for all owners of motor vehicles. The Financial Responsibility Act, § 64-24-42 et seq., N.M.S.A., 1953 (2d Repl.Vol. 9, Pt. 2, 1972), also establishes a policy for protection of the public involved in motor vehicle accidents. A classification that may once have had a fair and substantial relation to the objectives of the statute because of an existing factual setting, may lose its relationship due to altered circumstances.

In a Comment entitled "Review of the Past, Preview of the Future: The Viability of Automobile Guest Statutes," 42 U. Cin.L.Rev. 709, 719-20 (1973), the writer in discussing the impact of *Brown v. Merlo,* supra, states:

"The *Brown* court recognized that 'a classification which once was rational because of a given set of circumstances may lose its rationality if the relevant factual premise is totally altered.' The 'protection of hospitality' rationale was held to provide an insufficient basis for the guest statute's classification. Citing the fact that nearly 85 percent of automobile drivers carry liability insurance, the court found that there is no such being as an ungrateful guest. '[T]here is simply no notion of "ingratitude" in suing your host's *insurer.*' The court refused to recognize the theory that the statute merely provides a lower standard of care for passengers who do not pay for their transportation. Rather, 'it penalizes guests by wholly depriving them of protection against negligent injury.'

"The 'ungrateful guest' rationale has finally been judicially discredited because of the prevalence of automobile liability insurance. But was such a rationale ever viable? If ingratitude were such a horrendous evil to be guarded against, why did not all states find it necessary to pass guest statutes? Moreover, it has been suggested that 'it is none of the state's business what kind of virtuous emotions the citizenry feels or fails to feel.' Indeed, it is questionable whether the protection against ingratitude is a permissible state interest."

The rationale is convincing and we adopt it.

The second justification advanced for the guest statute is the prevention of collusive lawsuits against insurance companies. See *Brown v. Merlo,* supra; Prosser, Torts § 34 at 187 (4th Ed.1971). To effectuate this aim the statute draws a distinction between guests who pay and those who do not. The reasoning behind this classification is that supposedly a host who provides free transportation does so for a guest with whom he is well acquainted. Because of this presumed relationship, the driver may falsely admit liability in order for his guest to recover from the driver's insurance company. In order to eliminate this risk of possible fraud, all negligence causes of action for nonpaying guests have been eliminated.

In the same article appearing in 42 U. Cin.L.Rev., supra, at 720-21, the writer in a discussion of the "prevention of collusion" argument advanced in support of the guest statute, says:

"The *Brown* court also found the 'prevention of collusion' rationale insufficient to support the guest statute. To eliminate an entire cause of action simply because some people may file fraudulent suits was unreasonable. In terms of promoting this interest, the statute was found to be both overinclusive and un-

derinclusive. It was overinclusive in that it eliminated lawsuits between relatives and close friends even though collusion is absent. It also eliminated causes of action where no reasonable likelihood of collusion exists, for example, between driver and hitchhiker. It was underinclusive in that it 'permits negligence suits by many who have no less reason to collude than those barred from suing' (*i. e.*, friends or relatives who gave compensation). Compensation, then, is not the distinguishing factor between collusive and noncollusive lawsuits.

"Unlike the 'protection of hospitality' rationale, the 'prevention of collusion' premise is unquestionably a legitimate state interest. However, the *Brown* court found that the guest statute is an impermissible means to achieve such an objective. One writer concluded that '[f]raud [and] perjury . . . are to be treated in the penal laws and are not proper considerations where the balancing factors are the economic and social welfare of victims and their families.'

"If automobile guest statutes are an impermissible means to avoid collusive lawsuits, why were such statutes ever granted legislative approval? Insurance companies warned that automobile insurance premiums would increase as verdicts were rendered in favor of injured passengers. The legislatures were convinced by these strong insurance lobbyists that the guest statute would provide a savings to the insurance buying public.

"This argument is based on a faulty premise. One study revealed that factors other than the presence or absence of guest statutes determine insurance rates. Jurisdictions with guest statutes do not display a perceptible trend toward lower insurance premium rates. For example, when the guest statute was enacted in Connecticut in 1927, no reduction in automobile insurance premiums occurred. Neither was there an increase in such premiums upon repeal of the statute ten years later."

We agree.

We believe that it is unreasonable and arbitrary, and thus unconstitutional, to do away with negligence actions for an entire class of persons solely because some undefined portion of the class may instigate fraudulent lawsuits.

The basis underlying the equal protection doctrine is that persons similarly situated shall receive like treatment. This constitutional provision does not require absolute precision or mathematical nicety in the designation of classifications; however, it does not tolerate classifications which are so grossly over inclusive as to defy notions of fairness and reasonableness. The classification scheme employed by our guest statute overreaches merely those "tainted by the mischief" to include many persons free from the evil which the statute seeks to eliminate. As stated by the court in *Brown v. Merlo*, supra (8 Cal.3d at 875, 106 Cal.Rptr. at 402, 506 P.2d at 226) :

> "* * *. [T]his classification frequently encompasses close friends or relatives who, for example, share expenses through 'car pool' arrangements (Citations omitted.) or provide some marginal benefit to the driver (Citations omitted.), and yet who pose as great a risk of collusion as nonpaying guests. On the other hand, the 'nonpaying guest' classification ensnares many persons, such as hitchhikers, with whom the driver shares no close relationship and with respect to whom the danger of collusion is remote."

It is evident that the statute permits negligence actions by many who have no less reason to commit fraud than those barred from suing, while also eliminating negligence actions by many honest individuals with no reasonable likelihood of committing fraud.

From a more practical viewpoint, it can be seen that the guest statute does little to prevent collusion. The parties involved can very easily lie about whether any compensation was paid and thus avoid the bar interposed by the statute, just as they could

perjure themselves about the negligence issue if the statute was not in existence. The presence or absence of "compensation" is not a factor which promotes the objective of the statute, the prevention of fraud and collusion, in a reasonable and fair, or even rational manner.

It is recognized that the prevention of fraud and collusion is a valid state interest, and the courts should take notice of fraud and collusion when found to exist in a particular instance.

" * * *. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. * * *"

*Emery v. Emery*, 45 Cal.2d 421, 431, 289 P.2d 218, 225 (1955).

This court, after reviewing our guest statute in accordance with the guidelines established by the equal protection clauses of both the federal and state constitutions as interpreted by the appropriate courts, and with proper regard for the presumptions in favor of constitutionality, is satisfied that such statute is unconstitutional. The classification imposed by our guest statute is unreasonable, arbitrary, and does not rest upon some ground of difference having a fair and substantial relation to either of the objects of the legislation. See *Thompson v. Hagan*, supra; *Johnson v. Hassett*, 217 N.W.2d 771 (N.D. 1974); *Henry v. Bauder*, supra; and *Brown v. Merlo*, supra.

We conclude that the classifications created by our guest statute, as between those who are denied and those who are permitted recovery for negligently inflicted injuries, do not bear a substantial and rational relation to the statute's purposes of protecting the hospitality of the host driver and of preventing collusive lawsuits.

We hold that the New Mexico guest statute, § 64–24–1, supra, is unconstitutional and void as a denial of equal protection of the law under the Fourteenth Amendment to the U. S. Const. and § 18, art. II, N.M.Const., as amended.

Accordingly, we overrule *Romero v. Tilton*, 78 N.M. 696, 437 P.2d 157 (Ct.App. 1967); *Cortez v. Martinez*, 79 N.M. 506, 445 P.2d 383 (1968); and all other cases insofar as they are in conflict with our decision herein.

After due deliberation, it is the opinion of this court that the decision holding our guest statute unconstitutional shall be given modified prospectivity. That is, this newly announced rule shall apply to the case at bar, all similar pending actions and all cases which may arise in the future.

The cause is remanded to the district court with instructions to vacate its order granting defendant's motion to dismiss and to allow plaintiff to proceed with her action in negligence. It is so ordered.

McMANUS, C. J., and STEPHENSON and SOSA, JJ., concur.

OMAN, J., dissenting.

OMAN, Justice (dissenting).

The issue to be resolved on this appeal is whether our guest statute [§ 64–24–1, N. M.S.A.1953 (Repl.Vol. 9, pt. 2, 1972)] violates the equal protection provisions of article II, § 18 of the Constitution of New Mexico and the fourteenth amendment to the Constitution of the United States, in that liability of the owner of a motor vehicle for injury, death or loss sustained by a guest passenger in such vehicle, who has not paid for his transportation, arises only if the accident resulting in the injury, death or loss was intentional on the part of the owner or caused by his heedlessness or his reckless disregard of the rights of others, while liability for injury, death or loss sustained in an accident by a paying passenger in said vehicle depends upon a dif-

ferent and lesser degree of culpable conduct on the part of the owner, to wit, ordinary negligence. It is contended, and the majority of the court hold, that this legislative classification is arbitrary, unreasonable and violative of the equal protection provisions of our state and federal constitutions. I am unable to agree.

The majority correctly cite the four cases in which the constitutionality of our guest statute has been questioned. However, in my opinion, they erroneously overrule the decisions in two of those cases, *Cortez v. Martinez,* 79 N.M. 506, 445 P.2d 383 (1968) and *Romero v. Tilton,* 78 N.M. 696, 437 P.2d 157 (Ct.App.1967), cert. denied, 78 N.M. 704, 437 P.2d 165 (1968). The case law applicable to a judicial review of an attack upon the constitutionality of legislation is also cited in the majority opinion. However, in my opinion, the majority reach a result totally inconsistent with and contrary to a proper application of the principles stated in those cases. I urge a reading of those authorities and a careful comparison of the legislative classifications which have been upheld with the classification with which we are here concerned and which the majority now strike down.

In support of my position, I call particular attention to the following pronouncements concerned with equal protection attacks upon legislative classifications:

"Equal protection does not prohibit classification for legislative purposes, provided that there is a rational and natural basis therefor, that it is based on a substantial difference between those to whom it does and does not apply, and that it is so framed as to embrace equally all who may be in like circumstances and situations."

*Gruschus v. Bureau of Revenue,* 74 N.M. 775, 399 P.2d 105 (1965). (The above-quoted language is also quoted in the majority opinion)

"We examine the language of the act and look to the purposes sought to be achieved thereby to determine whether the case presented can withstand the general attack here made upon constitutional grounds. *We are not concerned with the uncertainty of the effects or wisdom of the legislation."* (Emphasis added).

*Arnold v. Board of Barber Examiners,* 45 N.M. 57, 109 P.2d 779 (1941)

"One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

*Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

The majority argue that the classification here involved is irrational because no reason appears why the host owner should owe a nonpaying guest a lesser degree of care than nonpassengers. The reason is simply that a reduction in the duty of care owed by him to nonpassengers could not possibly promote the following objectives which are clearly promoted by the classification in our guest statute: (1) hospitality and generosity; (2) multi-passenger use of motor vehicles in order to promote such social and governmental interests as the reduction of energy consumption, air pollution and traffic congestion; (3) prevention, or at least a reduction in the chances, of possible fraud and collusion.

Surprisingly, the majority also argue that these purposes, and particularly that of the promotion of hospitality and generosity, are irrational because of the widespread availability and existence of liability insurance coverage for all owners of motor vehicles. It is true that liability insurance is readily available to most owners and drivers at a price, and it is also true that we have a Financial Responsibility Act in New Mexico, §§ 64–24–42 to 104, N.M.S. A.1953 (Repl.Vol. 9, pt. 2, 1972). However, its provisions apply only to motor vehicle owners or operators who have been previously found to be responsible for damages to another or others for injuries

sustained in a motor vehicle accident and who have not discharged their responsibility. *Larson v. Occidental Fire and Casualty Company*, 79 N.M. 562, 446 P.2d 210 (1968). Even those coming within the act are required only to furnish proof of responsibility in limited amounts. Section 64–24–65, supra. The required amounts are clearly inadequate to protect the insured from personal liability for damages occasioned in many motor vehicle accidents, and in most, if not in all, accidents in which serious personal injuries result. Even in those cases in which the insurance coverage is sufficient to protect the insured against personal liability for any judgment recovered, we must recognize the personal inconvenience, anguish and non-reimbursable expenses inevitably involved in a defense of a personal injury claim.

I agree with the majority that "no principle in our general legal scheme" requires one to pay for the right of protection from negligently inflicted injury. However, this is not the issue. The question is whether the Legislature may properly distinguish between a nonpaying guest and a paying passenger with relation to their host's liability. It is for the Legislature, and not for the judiciary, to determine the risk-spreading, public policy issues behind the partial shielding of generous hosts.

It is not for this court to decide that hospitality is outmoded or not to be encouraged. Much like our guest statute, which is being struck down by the majority, is our so-called "Good Samaritan" Act. Sections 12–25–3 and 4, N.M.S.A.1953 (Repl.Vol. 3, Supp.1973). That statute, like our guest statute, rewards hospitality, generosity and concern for others in need by reducing the exposure to liability of one who freely renders emergency care, and leaves undisturbed the greater duty of ordinary care upon one who performs the same acts of care for remuneration.

The majority rely heavily on the reasoning and analysis of the California court in *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal. Rptr. 388, 506 P.2d 212 (1973). In my judgment, this reliance is clearly misplaced. The California guest statute differed substantially from our statute, in that it provided what the California court called statutory "loopholes." The California statute had the effect of narrowing those covered by the act to those "guests" injured (1) "during the ride" while (2) "upon the highway." The New Mexico statute contains no such limitations. It is clear from the reading of the opinion in *Brown v. Merlo*, supra, that these limitations and their haphazard application were significant factors in the determination that the statute arbitrarily discriminated against a class of guests. See Lascher, Hard Laws Make Bad Cases—Lots of Them, 9 Santa Clara Lawyer 1, 14 (1968).

In a series of decisions, the California court has pursued the course of progressively abolishing common law immunities and distinctions drawn with regard to duty owed based upon the status of the plaintiff relative to the defendant. *Malloy v. Fong*, 37 Cal.2d 356, 232 P.2d 241 (1951) (charitable immunity); *Emery v. Emery*, 45 Cal.2d 421, 289 P.2d 218 (1955) (intrafamily tort immunity); *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968) (land owner responsibility). The effect of these decisions was to leave the automobile guest virtually isolated under California law as one whose abilities to recover for personal injuries depended upon his status with respect to the defendant. This is not the case in New Mexico. In addition to our automobile guest statute, we have an airplane guest statute. Section 44–1–16, N.M.S.A.1953 (Repl.Vol. 7, 1966). We preserve most of the common law rejected by the California court. E. g., *Nahas v. Noble*, 77 N.M. 139, 420 P.2d 127 (1966) (intrafamily tort immunity); *Mozert v. Noeding*, 76 N.M. 396, 415 P.2d 364 (1966) (duties owed to invitees and licensees); *Latimer v. City of Clovis*, 83 N.M. 610, 495 P.2d 788 (Ct.App.1972) (duty owed to trespassers).

The automobile guest in this state is not singled out as an object of discrimination

as he appears to have been under California law and under the California guest statute. This isolation was a significant factor in the decision of the California court in *Brown v. Merlo,* supra. In addition, for the California court to cite *legislative* repeal of guest statutes in other states and judicial overruling of *court-created* doctrine as authority for the proposition that its statute violated equal protection principles is indicative of a penchant for substituting its policy judgment for that of the Legislature under the banner of equal protection.

For the foregoing reasons and the reasons cited in *Cortez v. Martinez,* supra, and *Romero v. Tilton,* supra, I hereby respectfully dissent.