568 P.2d 1245

**Leroy G. ATENCIO, Individually, and Elizabeth Atencio, a minor, by her father and next friend, Leroy G. Atencio, Plaintiffs-Appellants,**

**v.**

**The ESPANOLA HOUSING AUTHORITY, the City of Espanola, and John Doe, manufacturer, a corporation, Defendants-Appellees.**

**No. 2881.**

Court of Appeals of New Mexico.

June 28, 1977.

Pedro G. Rael, Zamora, Rael & Weinreb, Santa Fe, for plaintiffs-appellants.

Wayne C. Wolf, David W. Yount, Civerolo, Hansen & Wolf, Albuquerque, for defendant-appellee Espanola Housing Authority.

W. Booker Kelly, White, Koch, Kelly & McCarthy, Santa Fe, Scarborough & Scarborough, Espanola, for defendant-appellee City of Espanola.

## OPINION

SUTIN, Judge.

The only question for determination is whether § 23–1–23, N.M.S.A.1953 (Vol. 5), a limitation statute, is unconstitutional because it denied plaintiffs the equal protection of the law. We say that it is unconstitutional and reverse the judgment of the trial court.

The statute reads in pertinent part as follows:

> . . . *[N]o suit, action or proceeding to recover damages for personal injury* or death *resulting from the negligence of any city, town or village*, or any officer thereof, *shall be commenced except within one [1] year next after the date of such injury.* All such suits, proceedings or actions not so commenced shall be *forever barred*, Provided, however, that as to all such actions heretofore accrued, suit to recover thereon may be instituted at any time on or before December 31, 1941, but not otherwise.

"[N]o suit, action or proceeding to recover damages . . . shall be commenced" is a limitation not only on the remedy but also on the right to institute an action. *Wall v. Gillett*, 61 N.M. 256, 298 P.2d 939 (1956). Section 23–1–23 stands as a bar to recovery where the action is brought more than one year after the date of the injury. *Seiler v. City of Albuquerque*, 57 N.M. 467, 260 P.2d 375 (1953). It is not special legislation contrary to Article IV, Section 24, of the New Mexico Constitution, *Hoover v. City of Albuquerque*, 58

N.M. 250, 270 P.2d 386 (1954), and it denies to a minor the benefit of an extension of the limitation period. *Noriega v. City of Albuquerque*, 86 N.M. 294, 523 P.2d 29 (Ct. App.1974).

Plaintiffs contend the statute is unconstitutional because it violates Article II, Section 18, of the New Mexico Constitution. It provides in pertinent part:

.   .   . [N]or shall any person be denied the equal protection of the laws.

On *April 10, 1973*, plaintiff Elizabeth Atencio, nine years of age, was injured while playing on a merry-go-round for small children provided for them by the City of Espanola. The complaint was filed *April 8, 1976*, within a *three-year* period. The claim was barred by § 23–1–23, but it was not barred by § 23–1–8 that provides for a *three-year* limitation period after a cause of action accrues. Plaintiffs' complaint was dismissed with prejudice.

Plaintiffs contend that they were denied the equal protection of the law because under §§ 23–1–8 and 23–1–10, Elizabeth, nine years of age, would have had ten years (until her nineteenth birthday) to bring her claim against any person, firm or corporation, any county in the State, and the State of New Mexico, after her cause of action accrued, but, under § 23–1–23, her claim against the City was barred.

Were plaintiffs denied the equal protection of the law? This is a matter of first impression.

A. *The Legislative History of Limitation Statutes And Their Application to Persons Who Are Injured*

■ Before a determination on the constitutionality of § 23–1–23 can be made, we must explore the history of statutes of limitation in New Mexico and their application to persons who suffer injuries proximately caused by another. We are not confined to the "four corners" of § 23–1–23. We must view it in its relationship with other limitation statutes. "We regard the substance rather than the form [of § 23–1–23], and the controlling test is found in the operation and effect of the statute as applied and enforced by the State." *Gregg Dyeing Co. v. Query*, 286 U.S. 472, 476, 52 S.Ct. 631, 633, 76 L.Ed. 1232 (1932), 84 A.L.R. 831 (1933).

Limitation statutes involving the State, its agency or a political subdivision have suffered a "tortious" adventure in New Mexico.

Since territorial days, the limitation period in every action began to run after the cause of action accrued, "and not afterwards, *except when otherwise specially provided*." [Emphasis added.] Section 23–1–1, N.M.S.A.1953 (Vol. 5). *For an injury to the person a claim could be brought within three years after the cause of action accrued.* Section 23–1–8. The limitation period for minors was extended "so that they shall have one [1] year from and after the termination of such disability within which to commence said action. Section 23–1–10.

*In 1941*, § 23–1–23 was enacted. Prior thereto, a victim of tortious conduct of a municipality could commence his action within three years when corporate or proprietary activity was performed. For governmental activity, the municipality was protected from suit by sovereign immunity. This statute, by fixing a one-year limitation period, specially provided otherwise within the exception stated in § 23–1–1. What prompted the legislature to enact this statute is unknown. Prior to 1941, we find only two cases that involved actions against municipalities for injuries to the person. *Alarid v. Gordon*, 35 N.M. 502, 2 P.2d 117 (1931); *Johnson v. City of Santa Fe*, 35 N.M. 77, 290 P. 793 (1930). These were actions against the City of Santa Fe. No towns or villages had been sued. No fund raising problems were involved. Municipalities were not burdened with such tort actions. The City says that since corporate and proprietary acts of the City were denied the defense of sovereign immunity, the statute was passed for the benefit of the City. True, but why was the limitation period fixed at one year instead of three years? Three years was the general statute of limitations for injury to the person. If it was an arbitrary classification, it was unconstitutional.

However, in 1959, to overcome the doctrine of sovereign immunity, the legislature allowed actions to be brought against the State, county, city and public agencies for their negligence and the negligence of officers, deputies, assistants, agents or employees acting in the course of their employment, provided these entities carried liability insurance. Section 5–6–20, N.M.S.A.1953 (Repl.Vol. 2, pt. 1), repealed by Laws 1975, ch. 334, § 18. No limitation period was fixed for protection of the State, county and public agencies. *But during the period in question, and prior to the 1975 repeal of the above statute, the three-year limitation period provided by § 23–1–8 was applicable to the State, county and public institutions for an injury to the person.*

In 1975, the legislature enacted the Public Officers and Employees Liability Act, § 5–13–1, et seq., N.M.S.A.1953 (Repl.Vol. 2, pt. 1, 1975 Supp.) [repealed Laws 1976, ch. 58, § 27]. This 1975 Act did not expressly repeal § 23–1–23. Section 5–13–14 of this Act fixed a *three-year* limitation for every suit, action or proceeding for recovery of judgment, commenced against the State or any political subdivision of the State for "bodily injury" and "personal injury" as defined in the Act. For purposes of discussing "equal protection of the law," we note that the limitation period of *three years* applied uniformly to claims filed against the State and "local public body." This phrase was defined as "all political subdivisions of the state and their agencies, instrumentalities and institutions". Section 5–13–3(B). This definition, of course, included municipalities.

In 1976, the Tort Claims Act was enacted. Section 5–14–1, et seq., N.M.S.A.1953 (1976 Interim Supp.). It is effective until July 1, 1978. It repealed the Public Officers and Employees Liability Act, supra. It also covers the State and any political subdivision. Section 5–14–14(A) provides:

Actions against a governmental entity or a public employee for torts shall be forever barred, *unless such action is commenced within two [2] years* after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of eight [8] years shall have until his ninth birthday in which to file. This subsection applies to all persons regardless of minority or other legal disability. [Emphasis added.]

The Tort Claims Act did not expressly repeal § 23–1–23.

What action the legislature will take in 1978 is unknown.

For a history of the doctrine of sovereign and governmental immunity, see Kovnat, Torts: Sovereign and Governmental Immunity in New Mexico, 6 N.M.L.Rev. 249 (1976).

From a review of the history of limitation statutes, we note that victims of tortious conduct of municipalities have *one year* in which to commence an action for personal injury; that from 1959 to 1975, victims of tortious conduct of the State, the county, and public agencies carrying liability insurance, and any person, firm or corporation, had *three years* in which to commence such action; *that from 1975 to 1976, victims of tortious conduct of all public and private entities, except cities, had three years in which to commence an action for personal or bodily injury*; that from 1976 to 1978, victims of tortious conduct of all public entities have *two* years in which to commence an action, and yet, § 23–1–23 remains undisturbed on our statute books.

From 1959 to 1975, we can say that the legislature was moving toward the establishment of a uniform limitation period of three years on governmental and private tort liability except for "any city, town or village". It has not by implication repealed § 23–1–23 because this statute also applies to municipal liability in other fields of law and equity separate and apart from tort liability. However, the legislature has so emasculated this statute that its effectiveness has become a "stale defense" to a "stale claim." We must now determine whether it was effective against plaintiffs.

B. *Section 23–1–23 created an arbitrary classification and denied plaintiffs the equal protection of the law*

*McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975) delineates all of the rules of

law involved, when the validity of a statute is challenged, to determine whether a person is denied the equal protection of the law. In *McGeehan*, the New Mexico "guest statute" was declared unconstitutional because the classification, as between those who are denied and those who are permitted recovery for personal injuries, did not bear any substantial and rational relation to the legislative purposes of protecting the hospitality of the host driver and of preventing collusive lawsuits. The applicable standard was quoted as follows:

"A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" [88 N.M. at 310, 540 P.2d at 240]

To determine whether a special classification such as a municipality is reasonable, we must scrutinize two factors: (1) Are tort victims within this classification similarly circumstanced with those who are not? (2) Is there such a rational distinction between them that tort victims of municipal misconduct alone shall have one year in which to commence an action under § 23-1-23?

A victim of tortious conduct of a municipality is a plaintiff who seeks a claim for relief against a municipality. A victim of tortious conduct of a state, county, public agency, person, firm or corporation is a plaintiff who seeks a claim for relief against these entities. These are similarly circumstanced and should be treated alike unless there is some rational distinction that prevents equal treatment. We can find no such rationalization.

■ The doctrine of sovereign immunity was judicially discarded because it was obsolescent. It cannot be interposed as a defense in a tort claim by any governmental entity. *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975). Today, all governmental entities are subject to liability in accordance with the same rules of law as are applied to civil actions against any person, firm or corporation. Government entities, therefore, as tort-feasors, are put on an equal footing with private tort-feasors.

■ *Absent sovereign immunity*, any legislative classification must conform to constitutional guarantees so that all persons similarly circumstanced have equal access to the courts for the redress of wrongs. Under this concept, the classification consists of the State of New Mexico and its political subdivisions, and not the municipality alone. This is a reasonable classification. There is no rational basis for treating victims of tortious acts committed by municipalities differently than victims of tortious acts of all other governmental entities.

In determining limitation periods, the legislature should also consider the relationship of public to private entities.

*Absent sovereign immunity*, a municipality which is a public corporation is placed as a defendant in the same classification as a private corporation or partnership, all of these entities being creatures of the legislature. All of these entities serve the public within the municipality in varying degrees and in different respects. There is no rational basis for treating victims of tortious acts committed by municipalities differently than victims of tortious acts of private firms or corporations. A legislative classification that singles out one entity to the exclusion of all others may be arbitrary and unreasonable.

A statutory classification that treats victims of municipal torts differently from victims of private torts appears to be without a rational basis. For example, a citizen who is hit by a truck driven by an employee who works for a private company or public entity has three years to pursue his claim. Yet the same citizen, unfortunate enough to be hit by an employee of the municipality, must commence his action within one year or be forever barred, even though the victim of the municipal tort suffers a personal injury no less painful, disabling, costly or damage producing than the one he may have incurred when struck by the vehicle driven by any of the other entities. This is contrary to the spirit of the law in existence

at the time of the personal injury suffered by Elizabeth. It impedes the progress of the law toward a goal of uniform and even-handed justice. It impinges upon a fundamental right of equal access to a court to seek compensation for injuries suffered through the wrongful acts of another. It creates a repugnant discrimination that denies the equal protection of the law.

When we speak in terms of "equal protection of the law," we say that that which is equitable *in its application* is just and fair, and where a statute such as § 23–1–23 fails for lack of generality *in its application*, we must rectify the law.

■ We can find no authority, and none has been submitted to us, in which a court has determined the validity of a limitation statute like § 23–1–23. All authority submitted involves the validity of statutes or ordinances requiring *notice of a tort claim* against a local governmental entity. Annot., 59 A.L.R.3d 93 (1974). The courts are hopelessly in conflict with dissenting opinions prevalent. Notice of a tort claim is a condition precedent to the commencement of an action. The purpose of the notice is to give the city time to negotiate an amicable agreement with an injured party and to give a municipality time to investigate a claim, determine its merit and to prepare a defense if necessary. This constitutional issue is not before us. Section 23–1–23 bears no relationship to this purpose. It simply bars a remedy when an action is not commenced in time.

The only type of "notice case" that is directly in point is one that arises when a notice has been given but the action was not commenced in time. *Jenkins v. State*, 85 Wash.2d 883, 540 P.2d 1363 (1975) follows the precept that we have adopted in the instant case. The Washington statute reads:

> No action shall be maintained on any claim for damages until it has been presented to the board of county commissioners and sixty days have elapsed after such presentation, but *such action must be commenced within three months after the sixty days have elapsed.* [Emphasis by Court] [540 P.2d at 1365].

The Court said:

As stated above, we have been unable to discern any rational basis for treating counties and victims of their tortious conduct any differently than other governmental entities and victims of their tortious conduct. Accordingly, we hold RCW 36.45.030 unconstitutional as violative of Const. art. 1, § 12 and U.S.Const. amend. 14 insofar as it purports to impose a different time limitation on the commencement of tort actions against counties than is imposed on the commencement of tort actions against other governmental entities in the state. [540 P.2d at 1368].

The Espanola Housing Authority says: The fact that a Washington court found that there were no valid reasons for distinguishing cities, counties and states in Washington is not authority for the proposition that no such valid reasons exist in New Mexico.

The City says:

The *Jenkins* case is certainly distinguishable from the instant situation on its facts for in the State of Washington, as the court observed, the legislature had established a comprehensive uniform scheme of governmental tort liability so that all units of government, whether county, city or state, were exposed to the same areas of liability.

To distinguish is: "To point out an essential difference; to prove a case cited as applicable, inapplicable." Black's Law Dictionary (Rev. 4th ed. 1968) at 561. The defendants state a distinction without a difference.

■ The defendants claim that there are many distinctions between cities, counties and states: (1) That a shorter statute of limitations substantially narrows the cities' exposure and would thus be a vital factor in determining insurance rates; (2) that cities are limited in their ability to raise taxes; (3) that cities are severely limited to raise funds, i. e., if claims against a city must be commenced within one year of their occur-

rence, the city is better able to predict its financial position for a given year; (4) that cities have a greater need to know what claims they may be faced with during a fiscal year because, potentially, they have a larger number of claims for services rendered and a greater potential liability.

None of these distinctions meet the test to establish a reasonable classification. The test is not the effect that the statute has upon the economic policy of the city. As *McGeehan* says:

> In keeping with the traditional self-restraint of this court regarding constitutional challenges, we refuse to inquire into "the wisdom, the policy or the justness of an act of the legislature * *." *Gruschus v. Bureau of Revenue,* 74 N.M. 775, 777, 399 P.2d 105, 106 (1965). It is not within the realm of this court to question the social or economic policies underlying legislative acts. [88 N.M. at 310, 540 P.2d at 240].

*McGeehan* also said:

> A classification that may once have had a fair and substantial relation to the objectives of the statute because of an existing factual setting, may lose its relationship due to altered circumstances. [88 N.M. at 312, 540 P.2d at 242].

The guest statute was enacted in 1935. Section 23–1–23 was enacted in 1941, over a third of a century ago. Since 1941, time and conditions have changed. New legislative enactments have been made. Housing authorities have been created. Playground equipment has been furnished. Even if the classification made in 1941 may have had a fair and substantial relation to the objectives of the statute, which we do not concede, circumstances have changed.

We hold § 23–1–23 to be unconstitutional and reverse.

IT IS SO ORDERED.

LOPEZ, J., specially concurring.

HERNANDEZ, J., dissenting.

LOPEZ, Judge (specially concurring).

I concur in the result only.

The traditional equal protection test (as opposed to the strict standard of review) requires three steps in determining the reasonableness of a statutory classification: (1) the classification itself must be a rational one; *and* (2) the classification must further a proper governmental purpose; *and* (3) all persons within the classes established must be treated equally.

It must be emphasized that laws are almost always inherently unequal, involving some disparity in treatment and seldom affecting everyone in the country in like manner. The usual legislative method is to provide for or regulate *classes* of persons or property. Moreover, where *no* "fundamental" rights or "suspect criteria" are involved, classifications are generally presumed reasonable; i. e., if *any* state of facts can reasonably be conceived that would justify the classification, the existence of those facts will be assumed by the court to be the basis of the classification in order to uphold the statute. *Lindsley v. Natural Carbonic,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). The majority has not effectively countered this presumption, nor effectively established that the classifications involved *do not* further any proper governmental purpose.

Given a justiciable constitutional controversy, the court must nevertheless temper its constitutional analysis with the traditional reluctance to substitute a judicial determination for the conclusion of the legislature. In the case *sub judice,* however, the longstanding principle of deciding constitutional questions only when necessary must yield. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). I concur in Judge Sutin's opinion because the classification *itself* is irrational, although it may treat all persons within the class alike and may reasonably further a proper governmental purpose.