## Lottie E. Johnson, Appellee, v. Axel B. Johnson, Appellant.

### Gen. No. 30,355.

Parent and child—*recovery by divorced wife for support of child furnished out of her separate estate.* The former wife of a resident of this State, who procured her ·divorce in another State, the decree awarding her the custody of their child but making no provision for its support, may maintain assumpsit in this State to recover from her former husband amounts expended out of her separate estate for the reasonable support of such child, the father having failed and refused to provide for it.

Appeal by defendant from the Circuit Court of Cook county; the Hon. Philip L. Sullivan, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed February 2, 1926.

Benjamin I. Morris and Morris A. Mills, for appellant; Morris A. Mills, of counsel.

Baker, Holder & Schmidt, for appellee.

Mr. Justice Gridley delivered the opinion of the court.

In an action in assumpsit, commenced by defendant's former wife in said circuit court on July 29, 1922, and tried without a jury on a stipulation of facts, the court, on April 13, 1925, found the issues in plaintiff's favor, assessed her damages at $2,000, and entered judgment against defendant in that sum, and he appealed.

The amount awarded was for plaintiff's expenditures at the rate of $400 per year, out of her separate estate, for the five years next preceding the commencement of the action, for the support and maintenance of the parties' minor son, Erwin Ralph Johnson, who was about 8 years old when the action was commenced and

who always had been in plaintiff's care and custody. No questions are raised as to the amounts expended by her, as to the necessity therefor, or as to defendant's financial ability. The child was born in the State of Minnesota on January 23, 1914. The parties were divorced on complaint of the wife by decree (copy attached to the stipulation) of a district court of Minnesota on December 10, 1921 (about seven months before the present action was commenced). By the decree, also, plaintiff was awarded the custody of the child but no provision was made for alimony or for the child's support. The court found in the decree that defendant was served with summons and copy of the complaint in *Chicago, Illinois,* on October 8, 1921, but that he did not appear and contest the suit. It was agreed that the court had jurisdiction to enter the decree.

The points made by defendant's counsel for a reversal of the present judgment are, in substance: (a) that at common law a wife could not sue her husband, and, even under the present Illinois Act in relation to husband and wife, she cannot recover in this action such expenditures as were made during the period when the marital relation existed; (b) that, as to the period *after* the granting of the divorce and the giving of the child's custody to her, defendant is not liable for the child's support, for the reason that no express promise on his part to support it is shown, and the stipulated facts are not such as justify an implied promise; and (c) that plaintiff cannot maintain the present action in *Illinois,* for the reason that she voluntarily sought and obtained an absolute divorce in Minnesota, as well as a decree awarding her the custody of the child, and did not then obtain any order on defendant to make payments for the child's support.

From the stipulation the following additional facts appear: The parties were married at Berkeley, California, on April 16, 1913, and came to Chicago about June 1, 1913, where they lived in the home furnished

and maintained by defendant until July 28, 1913, when plaintiff left defendant and went to Minnesota, in which State she has resided ever since. Prior to the marriage defendant's residence and business were in Chicago and, since plaintiff left him, he has maintained his said Chicago home and business. During the period from the birth of the child in Minnesota on January 23, 1914, until July 29, 1917 (a date just five years prior to the commencement of the action), plaintiff expended the sum of $800, "out of her separate estate," for the child's support and maintenance. During the five years' period from July 29, 1917, until the commencement of the action, plaintiff "necessarily expended from her separate estate," for the child's maintenance and education, the sum of $400 per year, or $2,000. Defendant did not at any time contribute anything to its support or education. Plaintiff sued to recover the expenditures during both periods, but the court did not allow the item of $800, evidently holding that its recovery was barred by the statute of limitations, which defendant had pleaded. (See *Plaster v. Plaster,* 53 Ill. 445; also 67 Ill. 93.) Attached to the stipulation as exhibits are 48 original letters which passed between the parties, practically all of which are dated prior to the divorce decree. They disclose that after the child's birth plaintiff repeatedly requested that she be allowed to return to defendant and live with him in Chicago, but that he always refused the requests. We deem it unnecessary to further consider this correspondence as defendant's counsel admit in their printed brief that plaintiff did show a desire to return to defendant but that he refused to permit and accept plaintiff back into his household. We may mention, however, that in one of defendant's letters, in December, 1921, after the entry of the divorce decree, he writes: "I see in your letter that we are separated by law, and perhaps it is for the best. If you want to clear up the whole thing for good and give me a quitclaim, I will pay you

$1,000 in fifty dollar payments a month. I have no cash to speak of on hand, for trade has been very quiet for some time. We are both well, and wish all of you a Merry Christmas and a Happy New Year. Will enclose a check for $25 for Christmas present, and you can buy what you wish for it."

In the stipulation, also, are statements as to what defendant and plaintiff severally would testify to, if called as witnesses; that defendant would testify that when plaintiff left him about July 28, 1913, she did so against his wishes; that he then informed her that if she went to her relatives (then residing in Minnesota) "she need never return to him, nor would he receive her back"; that plaintiff would testify that, when on account of ill health she left for a visit with a relative in Minnesota, defendant did not so inform her; that on the contrary he consented to her going, purchased her ticket and assisted her to the train; that she intended only a temporary absence from Chicago and so informed defendant, and that during the months of September and October, 1913 (before the child's birth), she "repeatedly wrote to defendant offering to return to him at Chicago."

Prior to the passage of the Illinois Married Women's Act in February, 1861, a married woman "could not sue alone for her own property, or institute any suit in her own name for the recovery of any of her rights." (*Emerson v. Clayton,* 32 Ill. 493, 496.) Since the passage of that Act and the Act of 1869, and prior to the passage of the Act of 1874, a married woman could not maintain an action at law against her husband, "except in cases where it may be deemed indispensable to enable her to recover or enjoy her separate property." (*Chestnut v. Chestnut,* 77 Ill. 346, 350.) By the passage of the Act of 1874, and as it exists today as amended in some particulars (Cahill's St. 1925, ch. 68), practically all of the former disabilities of a married woman have been removed. (*Crum*

*v. Sawyer,* 132 Ill. 443, 454; *Snell v. Snell,* 123 Ill. 403, 409; *Thomas v. Mueller,* 106 Ill. 36, 41.) And a wife may now sue her husband and recover from him, except for labor performed or services rendered for him, on all contracts in the same manner as if they were not married. (*Thomas v. Mueller,* 106 Ill. 36, 42; *Bea v. People,* 101 Ill. App. 132, 134.)

In *De Brauwere v. De Brauwere,* 203 N. Y. 460, a married woman, who had been abandoned by her husband, filed a complaint in a New York court, seeking to recover from him moneys which, as alleged, she had been compelled to expend out of her separate estate to provide necessaries for herself and her three infant children. She further alleged that she had caused him to be arrested on the charge of abandonment, that he had been ordered to pay her a weekly stipend, but that he had refused to comply with the order and had moved to New Jersey. The trial court overruled the husband's demurrer to the complaint and entered an interlocutory judgment in her favor, which was affirmed by the Appellate Division. On appeal the Court of Appeals decided that the complaint stated a good cause of action and also affirmed the judgment. After referring to cases which had decided that "a parent is under a natural obligation to furnish necessaries for his infant children," and that, if the parent neglect that duty, any person who supplies such necessaries can recover of the parent their value on the theory of an implied promise, as can also the person, who supplies such necessaries to a deserted wife for the benefit of the children, of the husband, the court *held* (p. 463) that, a married woman's marital disabilities having been wholly removed by statute, she can now maintain any action in reference to her separate estate as if unmarried; (p. 464) that under the facts alleged "the husband was unquestionably under a legal obligation to provide his wife and children with the necessaries of life suitable to their con-

dition"; that "a wife who has applied her separate estate to the purpose of an obligation *resting primarily upon her husband* may now recover from him the reasonable amounts which she has thus expended out of her separate estate in discharge of his obligation"; and that "the plainest principles of justice require that a wife should have some adequate legal redress upon such a state of facts as that set forth in this complaint."

In *Laumeier v. Laumeier*, 237 N. Y. 357, an action was commenced in New York by the former wife of defendant, from whom she had obtained a divorce by decree of a Missouri court, to recover moneys expended by her for the maintenance and education of the child of the parties. Defendant was personally served in New York State. The trial court held that the New York courts did not have jurisdiction of the case, as it was a matter solely within the control of the Missouri courts, where the divorce had been granted, and dismissed plaintiff's action. This judgment was affirmed by the Appellate Division, but the New York Court of Appeals reversed the judgment. From its opinion, the following facts appear (p. 360): The parties were married in July, 1918, in Illinois, and thereafter resided together as husband and wife in St. Louis, Missouri. On June 6, 1919, the wife filed a petition for divorce in the circuit court of St. Louis. The cause was heard on the following day, and on June 12, 1919, a decree of absolute divorce was entered in her favor. Nothing was said in the decree regarding a child. It was not then born, although the mother was pregnant. It was born about six months after the entry of the decree. Subsequently plaintiff moved to New York State, where she and the child afterwards resided. Defendant never contributed anything toward the child's support, refused to do so, and denied all responsibility for it; and the expense of its care and maintenance fell upon

plaintiff. In her complaint she alleged that the child was the son of defendant, that the Missouri court had made no provision for its support, as the question was not there made an issue, and that defendant had failed and refused to contribute anything to its support, or to pay plaintiff's expenditures for its maintenance, etc. She asked for $5,000, for reimbursement for these expenditures. The court *held* (p. 363) that under the circumstances, both reason and authority favored the sustaining of plaintiff's right to maintain the action to recover the moneys necessarily expended by her for the support and maintenance of the child, saying (p. 364): "This child has rights which the courts have not disposed of or passed upon. * * * This action brought by the wife is not brought to recover any money for herself; it is brought to recover money spent upon the maintenance and support and education of the child. It is in reality brought for the benefit of and in behalf of the child. * * * The child is entitled to the support and maintenance *by its father*. If the father fails to support his child and furnish the necessaries to keep it alive, that is, fail and refuse to give it a home, food and clothing, education and medical attendance, these may be furnished by others, even a stranger to the family, and he will be held liable for it." After stating that such was the decision in the *DeBrauwere* case, *supra*, and referring to certain holdings in that case, the court continues (p. 365): "This is the nature of the action which the plaintiff here seeks to maintain. She is not looking for relief in the future. She is asking from the father the moneys which she has expended out of her own estate for the support, maintenance and education of his child. If a stranger could maintain such an action, why cannot she"? The court then cites a number of adjudicated cases, in Missouri and other States of the Union, as supporting its holdings and decision.

In *Gulley v. Gulley,* 111 Tex. 233, 237, it is decided

that a father, owning an adequate estate, can, at the
suit of the mother, be required to pay the value of
necessaries for his minor children furnished by the
mother from her own adequate estate, after the mother
has been decreed a divorce from the father and in that
decree the custody of said children awarded to her—
the decree failing to provide for said children's main-
tenance. In 15 Am. Law Rep. 569, in a note following
the report of said *Gulley* case, it appears that the
authorities in this country are not entirely uniform on
the question decided, and it is stated (p. 573) that
"in a few jurisdictions it is held that a divorce decree
awarding the custody of the minor children to the
wife absolves the husband from further duty to sup-
port and educate them," but that (p. 569) "the rule
supported by the weight of authority is that a father
is not released from his obligation to support or con-
tribute to the support of his infant children, by reason
of the fact that the mother has been granted an abso-
lute decree of divorce from him, and has been awarded
the custody of the children by a decree making no
provision for their maintenance." Many cases in dif-
ferent States of the Union are cited in the note as
sustaining the "majority rule." Such Illinois deci-
sions as we have been referred to, or have reviewed,
seem not to be adverse to the principles announced
in the two New York cases, *supra,* and in the *Gulley*
case. (See *Plaster v. Plaster,* 47 Ill. 290; *Steele v.
People,* 88 Ill. App. 186; *Konitzer v. Konitzer,* 112
Ill. App. 326; *Parkinson v. Parkinson,* 116 Ill. App.
112; *Panther Creek Mines v. Industrial Commission,*
296 Ill. 565; *Kelley v. Kelley,* 317 Ill. 104, 110.) In
*Zilley v. Dunwiddie,* 98 Wis. 428 (cited with approval
in *Harding v. Harding,* 180 Ill. 481, 508), a divorced
woman filed a claim against the estate of her former
husband for moneys expended in the care and main-
tenance of their minor child, during the husband's
life. The claim was allowed and the allowance affirmed

by the Supreme Court. It appears that in the divorce decree she was awarded the care and custody of certain children until the youngest became 10 years of age, but the decree made no provision for their support; that when the youngest child reached that age the father applied to the mother to have the child come to live with him, but the mother refused to let it go, and thereupon he told her that he would not pay for its support; and that thereafter he made frequent efforts to get the child to live with him, but she would not consent and the child continued to reside with her until a short time before the father's death, when the latter sent it away to school where it remained until after the father's death. It was *held* that a promise on the father's part to compensate the mother for her necessary expenses in maintaining the child, after the father became entitled to its care and custody, would be implied from his acquiescence in such maintenance by her and his failure to compel the child to live with him. (See also, *Spencer v. Spencer,* 97 Minn. 56.) In *Pretzinger v. Pretzinger,* 45 Ohio St. 452, the wife had obtained a divorce from her husband, and in the decree was allowed a sum of money as alimony, was given the care and custody of their child, but no provision was made for its support. It was *held* that the mother might maintain an original action against the father, in a court other than that in which the divorce was granted, to recover compensation for necessaries furnished the child after the decree, and that the obligation of the father to provide reasonably for the child's support, until it was in a condition to provide for its own support, was not impaired by the entry of the decree. (See also, *Brown v. Brown,* 132 Ga. 712.) In *Spencer v. Spencer, supra,* the contention was made that, the divorce court having by the decree awarded the custody of the children to the mother without providing for their support, it was to be presumed that provision for their support was unnecessary, and,

hence, the decree was conclusive as to the obligation of the father, unless modified by subsequent proceedings in the court which had granted the divorce, but the court said (p. 59): "It would seem, if the court omits to make in its decree any provision for the support of the children, that the presumption would be that the court deemed it best to leave the matter of the support of the children to rest upon the father's legal liability to support them until its further order." And further said: "In cases where the husband deserts his family in one State and becomes a resident of another State, leaving no property in the State where he left his wife and children, and where she commences an action against him for a divorce for his wrong, the court would have jurisdiction of the wife, of the marriage status, and of the custody of the children, but not of the husband or his property. It would be impracticable to make and impossible to enforce any decree as to the support of the children in such a case." So, under the stipulated facts of the present case, where it appears that the Minnesota court which granted the decree did not have such jurisdiction of the person of the defendant or over his property as would justify the incorporation in the decree of provisions for alimony and for the child's support, the insertion of such provisions would have been useless as they could not have been enforced.

Considering the stipulated facts, and the law as disclosed by the decided weight of authority, we are of the opinion that there is no merit in any of the above-mentioned contentions of defendant's counsel, and that the circuit court did not err in entering the judgment appealed from. It should be affirmed and it is so ordered.

*Affirmed.*

BARNES, P. J., and FITCH, J., concur.