Gerald H. Jordan, a Minor, by Richard James Jordan, His Brother and Next Friend, Plaintiff-Appellee, v. Standard Mutual Insurance Co., a Corporation, Defendant and Third-Party Plaintiff-Appellant.
Standard Mutual Insurance Co., a Corporation, Defendant and Third-Party Plaintiff-Appellant, v. Blanche D. Jordan, Individually and as Administrator of the Estate of Richard Jordan, Deceased, and as Natural Guardian and Next Friend of Gerald H. Jordan, a Minor, Third-Party Defendant-Appellee.

Gen. No. 11,873.

Second District.

June 9, 1964.

Crowley, Sprecher, Barrett & Karaba, of Chicago (Robert A. Sprecher, of counsel), for defendant and third-party plaintiff-appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora (Donald L. Puckett, of counsel), for plaintiff-appellee. Carbary and Carbary, of Elgin (George D. Carbary, of counsel), for third-party defendant-appellee.

SCHEINEMAN, J.

This is an appeal from a judgment against the defendant insurance company for $10,000, the limit of its policy, plus interest and costs, and a judgment denying the prayer of its third-party complaint.

This grew out of prior suit in which Gerald Jordan, a minor, by his brother as next friend, had obtained a judgment for $15,000 against the estate of his deceased father. His mother was the nominal defendant, as administrator, and the deceased was the named insured in a policy issued by defendant.

There was a two-car collision in which Richard Jordan was the driver of one and his son was a guest therein, and the other car was driven by Rudolph Franciscy in which there were three guests. Both drivers were killed, and all the occupants injured, so that litigation resulted.

Mrs. Jordan, as administrator, sued the estate of Rudolph Franciscy, and there was a counterclaim filed by his administrator, to which there was an answer denying negligence or willful or wanton misconduct. The son was also a party plaintiff originally, by Mrs. Jordan as his mother and next friend, and after her withdrawal, by his brother, Richard James Jordan, as next friend. This suit was settled, the guardianship receiving $4,500 and the estate $5,000 with the approval in both courts.

There was also a suit by the three passengers in the other car against both estates which resulted in substantial verdicts and judgments against the Franciscy estate and not guilty in favor of the Jordan estate.

Another suit, a wrongful death action by the Franciscy estate against the Jordan estate, resulted in a verdict for the Franciscy estate, reversed on appeal under doctrine of estoppel by verdict. Franciscy v. Jordan, 43 Ill App2d 344, 193 NE2d 219.

13

Finally, the minor plaintiff by his brother as next friend in the present suit, sued his mother as administrator of his father's estate, alleging willful and wanton misconduct on the part of his father. As previously stated, this resulted in a $15,000 verdict and judgment for the boy, affirmed on appeal by the Appellate Court, 35 Ill App2d 265, 182 NE2d 365, and leave to appeal was denied by the Supreme Court.

The defendant company seeks to avoid liability on the ground that Mrs. Jordan, standing in the shoes of her deceased husband, the insured, violated the assistance and co-operation clause of the policy by directing and managing a cause of action as guardian of the estate of her minor son against herself as administrator of her husband's estate.

In support of this claim defendant charges "collusive conduct" on the part of Mrs. Jordan, failure to co-operate in defense of the suit against the husband, and, in effect that her actions amount to constructive fraud in conceiving and instigating a suit against herself. It is charged that the attorneys for plaintiff in this suit were also attorneys for her in all the other litigation; that she and her attorneys knew that her husband was found not guilty of negligence in the suit by the three persons in the Franciscy car; that she and her attorneys alleged her husband's freedom from negligence in the wrongful death action against the Franciscy estate which was settled; that the substitution of her son, Richard, in her place as next friend for her son Gerald, was a sham and that in doing so she was actually suing herself; that she assigned to Gerald any claims she might have had due to expenditures made by her on his behalf, and authorized Gerald to sue her; that as guardian of the estate of her son, Gerald, she petitioned for authority to expend funds to pay attorneys for prosecuting

14

a suit against herself, and thus hired attorneys to sue herself.

Plaintiff replies that Mrs. Jordan, at all times, co-operated with defendant in all suits arising out of the occurrence; that she attended court whenever and wherever requested; that she complied with every request of the defendant in matters of defense and settlement of claims. Furthermore, it is claimed that if there were any breach of the co-operative clause, the defendant waived it by failing to elect to disclaim promptly, which has been held to be required. Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 149 NE2d 482; Krutsinger v. Illinois Casualty Co., 10 Ill2d 518, 141 NE2d 16.

The applicable conditions of the policy are as follows:

> "5. Assistance and Co-operation of the Insured— Parts 1 & 3; The insured shall cooperate with the company and, upon the company's request, attend hearings and trials, and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of the suits. The insured shall not, except at his own costs, voluntarily make any payment, assume any obligation or incur any expenses other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident.
>
> "6. . . . No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy . . . ."

It is apparent that the purpose of these conditions is to protect the insurer in its defense, on any suits brought against the insured and covered under the

15

policy. We do not find in this clause that it is an obligation of the insured to prevent the filing of any legitimate claim under the policy, or to assist the insurance company in evading a just claim. In effect, it requires the insured to tell the truth as to the facts known to him, and to do nothing that would prevent the insurance company from fairly defending itself, nor incur any obligation or expense that could be made a claim against it.

The fact that Mrs. Jordan is the surviving spouse of her husband and administrator of his estate, as well as guardian of her minor son's estate, and also is considered as taking the place of the insured under the policy, does not alter her responsibilities under the co-operative clause, neither does it impose any additional burdens upon her. The question is still whether she was willing to and did co-operate with the company in the defense of the claim of her son by assisting it, insofar as she was able, in determining the liability under the policy.

No claim is made that she did not comply with this duty, only that she instigated or arranged for the suit by her son against her husband's estate. The fact that her sympathies may have been with her son, and that her moral and legal obligation as guardian of her son's estate, may have prompted her to contact attorneys to investigate, determine, and if necessary, file suit to enforce his claim would not, and did not, preclude her from likewise assisting the company in determining its liability to the extent she was able, not being an eyewitness. To hold otherwise would be to deny the minor son his right to be compensated for a just claim merely because of his relationship to his mother. That he would have a just claim cannot be questioned in view of the success of his cause, both in the trial court and on appellate review.

16

The precise question whether the conduct of Mrs. Jordan was a breach of the co-operative clause has not been passed on in the courts of review of this state, but it has reached courts of review in other jurisdictions. The cases which have reached our courts of review requiring interpretation of the quoted clause in the policy present situations in which the person required to co-operate was a witness, but refused to testify, or made false statements of fact. Hence, we refer to cases from other jurisdictions.

One Illinois case not squarely in point is Latronica v. Royal Indemnity Co., 8 Ill App2d 337, 132 NE2d 16. The court defined the meaning of the co-operative clause as requiring "co-operation of the insured only in matters of defense and settlement of claims as requested by the defendant".

Levy v. Indemnity Ins. Co. of North America (La App) 8 So2d 774 involved a suit for injuries sustained by Ben Levy which occurred when he was injured in an automobile owned by his brother, Abraham, and driven by another brother, Louie. Subsequently Abraham, the named insured, was appointed curator for Ben. The suit was instituted by Abraham, as curator for Ben, against brother Louie and the insurance company.

The insurance company pleaded the insured's failure to co-operate, alleging it was the duty of Abraham, the named insured, to abide by that clause and, to this end to discourage and prevent, as far as possible, suits being filed against the insurer and liability being imposed on it; that his failure to do so and, in fact, his active violation of the duty, rendered the policy ineffective and invalid. It was charged that he had counseled with his brothers to have him appointed curator to institute the suit, for the purpose of mulcting defendant company; by employing attorneys on be-

17

half of Ben in furtherance of a scheme to pay damages "to him and his said brother"; filing suit for that purpose, paying and agreeing to pay court costs, and actively participating in the prosecution of the suit and furnishing evidence in support of it.

The court considered the fact that Abraham, the owner of the car and the named insured, also Louie, the actual insured driver of the car, and Ben, the injured party, are all brothers. It also considered the fact that Abraham, the named insured, was the nominal plaintiff as curator. The court found that the parties gave to plaintiff's attorney and the insurance company all the facts; that any or all requests made by the insurance company were complied with; that nothing was concealed. The court considered that it would not be wrong for an insured to give a plaintiff a statement of the true facts known only to the insured, if he gave the same facts to the insurer, or put up money with which to finance a suit. The court's ruling as to the clause was as follows:

> "The purpose of the co-operative clause in the policy is to require the insured to disclose all of the facts within his knowledge and otherwise aid the insurance company to determine its liability under the policy. It is not the obligation of an insured to assist the insurance company to defeat its liability. The obligation of the insurance company is to pay the damages if liable, and *not to refuse to pay* regardless of liability."

This case was cited and followed and the above paragraph quoted in Elba v. Thomas (La), 59 So2d 732. The latter case involved a suit by a wife against the insurance company of her husband for injuries incurred while she was riding as a guest with him. To the insurance company's defense that the insured violated the assistance and co-operative clause of its

18

policy, the court held: "There is no proof of such violation nor could it be urged that the insured, had he testified favorably for his wife, would have violated this clause." Here follows the reference to the Levy case.

In the Texas Court of Civil Appeal there arose the case of Frazier v. Glen Falls Indemnity Co. (Tex Civ App), 278 SW2d 388. The trial court had entered a summary judgment for the insurance company on the ground of nonliability for violation of the co-operative clause. The Appellate Court reversed on these facts:

Insured and his wife were riding with their daughter and son-in-law, the latter driving and, therefore, becoming an insured. A tire blew out, and the car left the highway crashing into a tree. The named insured was seriously injured, and his wife killed. The son-in-law gave a statement to the insurance company, but refused to sign it. Both the named insured and the son-in-law consulted the same attorney, who wrote letters on behalf of each of them to the company requesting a settlement of claims against the son-in-law for damages incurred. Such letters contained a recitation of facts which probably would have entitled the claimant to a recovery even under the guest statute.

It was held that the desire of the son-in-law that the named insured collect the greatest possible amount from the company did not constitute a breach of the clause; nor did the parties violate the co-operative clause so long as fraud played no part; nor did the fact that both parties employed the same attorney.

In the Federal Court there is the case of State Automobile Ins. Co. v. York, 104 F2d 730; it involved a suit by insured's wife against him for injuries received in an automobile accident. The court held the conduct and testimony of the parties should be carefully scrutinized by the court and jury, since their interest is not really adverse; but that the policy is

not avoided under the co-operative clause, merely because the sympathy of the insured is with his injured wife rather than with the insurer, or because he does not suspend family relations during litigation. The question is, has he failed to furnish proper assistance to the insurer in its defense of suit, or has he entered into collusion with the plaintiff to establish liability unfairly.

We consider these cases involve situations parallel to the one now before us, and that the reasoning given therein is sound. Therefore, we hold that Mrs. Jordan did not violate the co-operation clause in arranging for the financing of her son's suit, nor in retaining for him the same attorneys who had represented her, nor in any other way shown by the evidence. It becomes unnecessary to consider the question whether the company waived any right to assert a breach of conditions. The judgments are affirmed.

Judgments affirmed.

CARROLL and MORAN, JJ., concur.