FRANCES E. WILLIAMS, Plaintiff-Appellant, *v.* WILLIAM A. WIL-
LIAMS, Defendant-Appellee.—(UNITED SECURITY INSURANCE COM-
PANY, Petitioner-Appellee.)

Third District   No. 81—87

Opinion filed August 27, 1982.

BARRY, J., dissenting.

Raymond J. Conklin, of Rock Island, for appellant.

Dennis R. Fox, of Califf, Harper, Fox & Dailey, of Moline, for appellee
United Security Insurance Company.

Dorothea O'Dean and Stewart R. Winstein, both of Winstein, Kavensky,
Wallace & Doughty, of Rock Island, for appellee William A. Williams.

JUSTICE HEIPLE delivered the opinion of the court:
On December 3, 1980, Frances Williams, the plaintiff, sued her
husband, William Williams, the defendant, for negligence. On July 7,
1979, Mrs. Williams was a passenger in a car operated by Mr. Wil-

liams. Allegedly, he drove his car carelessly over the center line of Koloa Springs Road in Rock Island County, crashing into an oncoming vehicle. Due to the collision, Mrs. Williams suffered serious personal injuries. Mr. Williams did not answer the complaint but, through counsel furnished by his insurance carrier, filed a motion to dismiss it. (Ill. Rev. Stat. 1979, ch. 110, par. 48.) The trial judge granted the motion, certifying his order for immediate appeal. (73 Ill. 2d R. 304(a).) Mrs. Williams now seeks review.

Plaintiff has cloaked the issue of this appeal in a procedural guise, maintaining the trial judge erred in granting defendant's motion to dismiss her complaint. She contends a dispute exists between Mr. Williams and his insurer as to whether her husband personally chose to assert the defense of interspousal immunity. She claims that the defense of interspousal immunity is one that is personal to the husband; that it cannot be asserted in his behalf by his legal counsel, who was hired by his insurance carrier to represent him. To underscore this point, the husband, himself, has, at the appellate level, retained separate and personal counsel who has intervened in this appeal so as to advise this court beyond peradventure that the husband not only has no objection to being sued by his wife but that he positively welcomes it. Notwithstanding his purchase of insurance to defend him in court and to pay judgments entered against him, he abjures this too successful defense which resulted in the dismissal of the claim. What he is saying, in effect, is that he doesn't want the claim defended; he wants it paid! The husband's insurance carrier and counsel retained by it to defend the husband understandably have a different view.

This lawsuit, thus, has all the earmarks of a collusive undertaking. Black's Law Dictionary defines collusion as a deceitful agreement or compact between two or more persons, for the one party to bring an action against the other for some evil purpose, as to defraud a third party of his right.

■ The wife and husband in concert are attempting to define the issue in this case so as to avoid the operation of the rights-of-married-women act (Ill. Rev. Stat. 1979, ch. 40, par. 1001 *et seq.*), which bars a personal injury action between spouses for torts occurring during their marriage. To sidestep this law, they assert that the defense is purely personal to the husband; that it cannot be asserted in his behalf by hired insurance counsel. Such assertion is a sham issue. It might equally be argued that the statute of limitations, release and satisfaction and lack of personal jurisdiction are personal defenses. Defenses they are. Personal they are not. When the husband contracted to purchase liability insurance for the purpose of defending

and paying claims, he bound himself to cooperate in the defense of litigation against him. His assertion in this appeal would appear to violate the cooperation clause of his insurance contract.

The only real issue in this case is whether the rights-of-married-women act bars a personal injury action between spouses for torts occurring during their marriage. Because it does, the trial court is affirmed.

At common law a wife had no independent legal status apart from her husband. She could not sue or be sued in her own name since she had no separate legal *persona*. (*Love v. Moynehan* (1855), 16 Ill. 277.) Because of this feudal conception of a wife's status before the law, a husband was held to be immune from suit. This immunity did not merely arise from the fact the wife had no remedy against her husband for a wrong the latter committed against her. Because marriage was conceived as a unit, and for the most part the husband was the unit, whatever rights of action the wife did possess were only enforcible by her husband. Thus, the immunity evolved from the fact of the marriage relationship. The upshot being that a husband could not sue himself. *Welch v. Davis* (1951), 410 Ill. 130, 132-33.

This common law view had an abbreviated history in Illinois. In 1861, the Illinois legislature passed the married woman's act. (Ill. Laws 1861, par. 143, sec. 1.) In sum, this legislation provided that a married woman could own, acquire, and convey property in her own name and do whatever necessary to protect such property. This included maintaining lawsuits against others concerning such property. By enacting the husband-and-wife act in 1874, these rights were broadened considerably. (Ill. Rev. Stat. 1874, ch. 68, par. 1 *et seq.*) Thus, a wife could: make contracts and incur liabilities to the same extent as an unmarried woman; commit and be solely responsible for tortious acts apart from her husband; and, sue her husband where he wrongfully converted her own separate property. (*E.g., Johnson v. Johnson* (1926), 239 Ill. App. 417.) This act, however, was mum on whether a married woman could sue her husband for torts committed against her by her husband during their marriage.

Marjorie Brandt brought that very question before the Illinois Supreme Court. (*Brandt v. Keller* (1952), 413 Ill. 503.) Mrs. Brandt and her husband, Joseph Keller, were estranged. They met to discuss divorce arrangements. While a passenger in Mr. Keller's automobile, Mr. Keller collided with another automobile. Mrs. Brandt suffered serious injuries. She filed a complaint against Mr. Keller, claiming his operation of the car was done in a wilful and wanton manner so as to injure her. Mr. Keller's motion to dismiss his wife's complaint was

granted, the court holding he was immune from suit by his wife.

Although acknowledging the absence of any legislative authority for their action, the supreme court (over dissent) reversed. Essentially, it was held the husband-and-wife act of 1874 abrogated a husband's common law immunity from suit. Opting for what was perceived as the judicial trend, the supreme court felt the statute implied the right for women to institute any type of legal proceeding against anybody including their husbands. A liberal construction was fashioned to "effectuate the manifest intention of the legislature" which was "to establish the separate identity of a married woman in all litigation." (*Brandt v. Keller* (1952), 413 Ill. 503, 513.) Hence, a cause of action was judicially created, as a matter of statutory construction, so a wife could sue her spouse for torts he committed against her during their marriage.

The General Assembly's reaction to *Brandt* was swift, total, and opposite. The very next session it amended the 1874 act by adding the proviso that "neither husband nor wife may sue the other for a tort to the person committed during coverture." (Ill. Rev. Stat. 1953, ch. 68, par. 1.) No committee hearings on this amendment appear in the legal literature. It might be argued that such revision was designed to reinstate the common law rule which *Brandt* sought to put to rest. It is quite obvious from the plain language of the amendment that it was intended to abolish any belief that a wife could sue her husband for personal torts committed during their marriage.

In *Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, the amended version of the statute was scrutinized. Mrs. Heckendorn sued the administrator of her deceased husband's estate for personal injuries resulting from the alleged wilful misconduct of her husband during their marriage. After examining the common law, the husband-and-wife act, *Brandt*, and the amendment, the supreme court declared:

> "The legislature created a statutory disability during the lifetime of the parties. Its intent was to prevent a cause of action from coming into being. If a cause of action could not exist in favor of the wife and against the tort-feasor husband, it could not survive his death. We find nothing in the language of the proviso to justify the anomalous conclusion that the existence of a cause of action between husband and wife is entirely dependent on the fortuitous event of the death of the spouse. We therefore conclude that the proviso of 1953 was intended to bar the present action." (19 Ill. 2d 190, 193.)

The supreme court went on to uphold the statute under the Illinois

Constitution, as well as a challenge on Federal due process grounds. (Compare with *Tyrken v. Tyrken* (1978), 63 Ill. App. 3d 199, 202-03 (1970 Illinois Constitution), and *Steffa v. Stanley* (1976), 39 Ill. App. 3d 915, 917-18 (Illinois and Federal equal protection clauses).) The supreme court concluded the *Brandt* holding which supplanted the common law rule was superseded when the Illinois legislature enacted the 1953 amendment. (*Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 195.) This holding has been consistently followed. (*Wartell v. Formusa* (1966), 34 Ill. 2d 57, 60; accord, *Herget National Bank v. Berardi* (1976), 64 Ill. 2d 467, 471.) All these cases make clear that a cause of action does not exist between spouses for personal torts they commit against one another during their marriage.

Plaintiff says her complaint should not be dismissed since her husband, not the insurer, is entitled to assert the personal defense of interspousal immunity. She claims she has a cause of action and is thus entitled to a remedy. *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384.

■ The issue in *Elkins* was whether an insured wife, who could not recover damages from her tortfeasor husband because of interspousal immunity, was still "*** legally entitled to recover ***" (*e.g.*, Ill. Rev. Stat. 1979, ch. 73, par. 755a) from him under the uninsured motorist contract of her husband's insurance policy. But such an action is not the same cause which Mrs. Williams seeks to litigate. (Annot., 73 A.L.R.3d 632, 649-56 (1976).) In *Elkins*, interspousal immunity was held not to extinguish Mrs. Elkins' claim since her recovery was premised on the uninsured motorist contract in the insurance policy. Contrariwise, our supreme court has stated unequivocally that our rights-of-married-women act enables interspousal immunity to prevent a cause of action from coming into being where a spouse sues another for personal torts during the marriage. (*Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 193.) Thus, interspousal immunity is not merely a defense, but a statutory disability. And, such does not merely address the enforcibility of a remedy, but denotes that a wife or a husband, as the case may be, is not entitled to prosecute a cause of action against the other for personal torts committed between them during the marriage. (See *Wilhelm v. Universal Underwriters Insurance Co.* (1978), 60 Ill. App. 3d 894, 900; Note, *Uninsured Motorist Coverage and Interspousal Immunity*, 57 Chi.—Kent L. Rev. 297 (1981).) Consequently, the rationale in *Elkins* is not applicable to the cause at bar. It is significant that in *Elkins* the majority opinion neither addresses nor overrules *Heckendorn* and its progeny.

■ Various reasons sound from different quarters for discarding

the notion of interspousal immunity. (Prosser, Torts sec. 122, at 859-64 (4th ed. 1971); Annot., 92 A.L.R.3d 901, 906, 910 (1979); Note, *Interspousal Immunity—Time for a Reappraisal*, 27 Ohio St. L.J. 550 (1966).) The common law notion of the marital unity of husband and wife is a concept at odds with our present statutory view of marriage, which, as judically interpreted, incorporates a partnership theory of marriage. (*In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 94.) On the other hand, a persuasive argument can be advanced that the concept of interspousal immunity prevents collusive litigation between spouses to bilk insurance companies. The debate continues. In view of our statute, it is not our job to evaluate the merits or shortcomings of these competing arguments. The fact remains that interspousal immunity is a constitutional enactment of our State's public policy. (*Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 195.) As such, it is for the Illinois General Assembly, not us, to determine whether such immunity retains continuing vitality and significance for Illinois citizens. We have no authority to amend the statute by judicial fiat.

Mrs. Williams' complaint was properly dismissed. The defendant's insurer can invoke Mr. Williams' statutory immunity from suit for plaintiff's claim for damages. Mrs. Williams' cause of action does not arise.

For the reasons stated, the order of the Rock Island circuit court dismissing plaintiff's claim with prejudice is hereby affirmed.

Affirmed.

SCOTT, P. J., concurs.

JUSTICE BARRY, dissenting:

The sole issue on appeal is whether the trial court committed error in granting the defendant's motion to dismiss. The majority chooses to ignore this issue simply by stating that the plaintiff-appellant "has cloaked the issue of this appeal in a procedural guise," and has rewritten the issue to decide whether the statutory interspousal immunity in Illinois is an absolute bar to the plaintiff's cause of action. That issue was decided by the supreme court in *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 396 N.E.2d 528, in a split 5 to 2 opinion. By my view, the majority today has decided to overrule the *Elkins* majority. In order to support the decision of the trial court in this case, the majority adopts the dissenting opinion in *Elkins* and declares that interspousal immunity is *not* a personal defense. The *Elkins* majority opinion plainly says otherwise. Interspousal "immu-

nity *** like a defense based upon the statute of limitations can be waived by the defendant spouse." 77 Ill. 2d 384, 390, 396 N.E.2d 528, 531. See also *Soedler v. Soedler* (1980), 89 Ill. App. 3d 74, 75-76, 411 N.E.2d 547, 548: "[I]n *** *Elkins* *** the Illinois Supreme Court held that the immunity established by the 1953 amendment did not bar suit, but rather that it provided the tortfeasor spouse with a defense, that of immunity, which could be raised as a defense and which could also be waived."

Notwithstanding the majority's caveat that "we have no authority to amend the interspousal immunity statute by judicial fiat," I feel constrained to note that neither does this court have authority to overrule a decision of the Illinois Supreme Court. (*Vinke v. Artim Transportation System, Inc.* (1980), 87 Ill. App. 3d 400, 408 N.E.2d 1112.) With all due respect, I dissent. I would reverse the order of the trial court.

On December 3, 1980, plaintiff filed her complaint alleging that she had suffered personal injuries arising out of an automobile accident in which she was a passenger in an automobile negligently operated by the defendant. Counsel for the defendant filed a motion to dismiss, alleging that Mrs. Williams' cause of action is barred by section 1 *et seq.* of the Illinois married women's act (Ill. Rev. Stat. 1979, ch. 40, par. 1001 *et seq.*) inasmuch as the parties were married at the time of the accident and the plaintiff/wife's cause of action was premised on the defendant/husband's alleged negligence. Attached to the motion was an affidavit, signed by Mr. Williams, in which he stated: (1) that Frances E. Williams, plaintiff, is his wife; (2) that they were married on December 24, 1968, and that they have since resided in Illinois; and (3) that they were husband and wife on July 7, 1979, the date of the accident.

A hearing on defendant's motion was held on January 26, 1981. At the hearing, plaintiff argued that interspousal immunity under section 1 is a personal defense to Mr. Williams which may be asserted or waived only at the discretion of the defendant. She further argued that her husband was being represented by counsel selected by his insurer, United Security Insurance Company. Under these circumstances, the argument continued, it could not be assumed on the basis of the pleadings, including the motion to dismiss, that a decision to assert the defense of interspousal immunity was in fact made by defense counsel in the interest of representing the defendant/husband as opposed to representing the insurer, United Security, who had hired counsel.

Defense counsel responded to this argument by observing that

pleadings in this case did not indicate that defense counsel for Mr. Williams represented anyone other than the defendant himself; defense counsel had raised the defense on behalf of his client, Mr. Williams; the defense, thus asserted, barred recovery by Mrs. Williams; and, therefore, defendant was entitled to dismissal as a matter of law. The trial court thereafter granted the motion to dismiss with prejudice and contemporaneously granted the plaintiff leave to file an affidavit and a copy of the insurance policy for consideration of plaintiff's argument on appeal. The affidavit and the insurance policy were filed in the trial court on February 17, 1981, and are properly included in the record on appeal. They support the allegations made by plaintiff at the hearing on defendant's motion in that they raise issues about defense counsel's authority to assert the immunity defense.

The defendant's motion was filed under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48), on the basis that the doctrine of interspousal immunity bars the plaintiff's claim. Section 48 confers to the trial court authority to grant or deny a motion to dismiss. Specifically, section 48(3) reads as follows:

> "If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. *If a material and genuine disputed question of fact is raised* the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion *without prejudice* to the right to raise the subject matter of the motion by answer and *shall so deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in* apt time." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 110, par. 48(3).

In the present case, the plaintiff failed to present affidavits or other proof to obviate the defendant's asserted grounds for dismissal prior to the hearing on the motion to dismiss. Instead, plaintiff's counsel alleged at the hearing that there were unresolved issues (1) regarding whether or not the defendant has personally asserted the immunity defense to his wife's claim, and (2) regarding whether a conflict of interests existed between the defendant and his attorney. Given these facts, it is apparent that the second—rather than the first—sentence of section 48(3) controls the disposition of this case.

The threshold inquiry in ruling on the motion to dismiss under section 48(3) is whether a material and genuine disputed question of fact has been raised. Plaintiff's first contention on appeal is that in-

terspousal immunity asserted by the insurer will not bar her claim. The defendant-insurer contends that the doctrine of interspousal immunity (Ill. Rev. Stat. 1979, ch. 40, par. 1001) is an absolute bar to plaintiff's negligence cause of action against her husband and that the issue raised by the plaintiff at the hearing, and reiterated in her post-hearing affidavit, is not material. Recent developments in Illinois case law lead to the conclusion that interspousal immunity is not an absolute bar to plaintiff's cause.

The supreme court, as aforesaid, held in *Elkins* that interspousal immunity can be waived by the defendant spouse. (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 390, 396 N.E.2d 528, 531.) In *Elkins*, Mrs. Elkins was injured while riding in an automobile driven by her husband. She filed a claim under the uninsured motorist provision of her husband's insurance policy. (The policy *specifically excluded* claims for personal injuries resulting to members residing in the same household as the insured.) While Mrs. Elkins' claim was pending arbitration, Allstate, her husband's insurer, filed suit for declaratory judgment in the circuit court seeking an adjudication that interspousal immunity barred Mrs. Elkins' recovery. The trial court granted Allstate the relief sought. Both the appellate court and Illinois Supreme Court, however, disagreed with the trial court, and held that interspousal immunity is personal to the husband and wife and cannot be raised by a third party. Accordingly, Allstate's assertion of interspousal immunity was ineffectual as a defense to Mrs. Elkins' claim. *Allstate Insurance Co. v. Elkins* (1978), 63 Ill. App. 3d 62, 65-66, 381 N.E.2d 1, 4; 77 Ill. 2d 384, 390, 396 N.E.2d 528, 531.

The insurer in the present case argued that *Elkins* is not controlling precedent because the claim in *Elkins* was filed under the uninsured motorist provision of an automobile insurance policy and was directed against the insurer rather than directly against the insured spouse. I find these distinguishing factors legally insignificant. Both cases involved contractual obligations between an insurance company and the defendant-spouse. In both cases the underlying action giving rise to the insurer's duty to pay sounded in negligence. And in both cases the insurer attempted to assert a defense personal to the insured spouse which was not available *per se* to the insurer.

The *Elkins* court specifically stated that "the effect of the [statute conferring interspousal immunity] was not to destroy the cause of action of the injured spouse." Instead, the statute confers immunity on the tortfeasor spouse which may be asserted or waived depending on whether the tortfeasor spouse elects to avoid the injured spouse's recovery on an otherwise valid claim. Because of the personal nature

of the defense, it is incumbent on the insurer, upon the plaintiff's challenge, to show that the defendant's counsel's assertion of interspousal immunity was made with the defendant/insured's knowledgeable consent.

The trial court in the present case made no inquiry into Mr. Williams' personal participation in asserting the defense. Accordingly, it would appear that the allegations made by the plaintiff at the hearing and in the post-hearing affidavit raised a material and genuine disputed question of fact—specifically, did Mr. Williams personally assert the defense; or was the defense, in fact, asserted by his counsel without Mr. Williams' knowledgeable consent as claimed by Mr. Williams in the trial court.

The majority herein attempts to analogize the instant case to *Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 166 N.E.2d 571, and its progeny, disregarding the realities of modern society and the *Elkins* majority opinion which in my view clearly controls the outcome of the instant litigation. Moreover, the majority here confused the issue in *Heckendorn* and *Wartell v. Formusa* (1966), 34 Ill. 2d 57, 213 N.E.2d 544, with the narrow issue presented in *Elkins* and the instant case, *i.e.*, whether interspousal immunity is absolute or personal to the tortfeasor spouse.

In my opinion, *Heckendorn* and its progeny are not sufficiently on point to contribute to the resolution of the present case. The issue before the *Heckendorn* and *Wartell* courts was simply whether one spouse could sue the estate of the other, deceased spouse. The courts consistently held that if statutory interspousal immunity, asserted as a defense by the defendant-spouse prior to the defendant spouse's death, would have barred the plaintiff-spouse's action, then it would also bar an action commenced after the defendant spouse's death for a tort which had been committed during the parties' marriage. The same interspousal immunity defense available to the defendant-spouse during his lifetime was thus determined to be an effective defense if asserted by the personal representative of the deceased defendant-spouse's estate. (*Herget National Bank v. Berardi* (1976), 64 Ill. 2d 467, 356 N.E.2d 529, adds no support to the majority's position since the wrongful death action advanced therein by the personal representative of the wife's estate sought not to recover benefits on behalf of the deceased wife herself, but rather benefits were sought on behalf of surviving children.)

The general rule announced in *Heckendorn* and *Wartell,* lacking any evidence that the executor did not, in fact, assert the interspousal immunity defense personally in his capacity as representative of the

deceased, is unaffected by *Elkins*. Just as the defendant-spouse himself, while alive, might desire to protect his estate from his spouse's tort claims, so it is eminently reasonable that the personal representative of the deceased defendant-spouse's estate may wish to protect estate funds from claims in tort advanced by the surviving spouse. In neither *Heckendorn* nor *Wartell* was the court asked to decide whether the defense of interspousal immunity had in fact been asserted by the personal representative, as opposed to some interested third party, such as Allstate in *Elkins* and United Security in the case before this court.

I find the Second District's recent opinion in *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236, instructive with regard to the viability of the doctrine of interspousal immunity since *Elkins*. In *Wirth*, the court was asked to determine whether, after *Elkins*, a third party (a co-tortfeasor) could maintain a cause of action for contribution from the plaintiff's husband even though the plaintiff was barred, by her husband's assertion of interspousal immunity, from maintaining a direct action against him. After a comprehensive review of the history, development and recent erosion of the doctrine of interspousal immunity, the court determined that a third-party suit for contribution, as a matter of public policy, was not barred by the statutory defense of interspousal immunity. In reaching its conclusion, the court reasoned that inasmuch as the interspousal immunity statute is a procedural bar, rather than a bar to the plaintiff-spouse's substantive cause of action, it would not debar a third-party complainant from recovering contribution from the third-party defendant-spouse.

The obvious effect of the third party's claim in *Wirth* is to permit the plaintiff-spouse to recover damages from the defendant-spouse because of the fortuity that a co-tortfeasor is involved in the action. Applying the *Wirth* court's reasoning to the facts of the instant case, it would appear that if Mrs. Williams were successful in an action against a co-tortfeasor (*e.g.*, operator of the vehicle with which the Williams' car collided), then interspousal immunity would not be available as a defense (whether asserted by Mr. Williams personally or by United Security) against the co-tortfeasor's suit for contribution.

While the instant case does not at this point involve a co-tortfeasor and the issue of contribution, the *Wirth* opinion clearly recognized that the modern tort trend with respect to interspousal immunity is to dilute the doctrine so as to avoid its harsh results. In Illinois this was achieved in *Elkins* by interpreting the statutory defense as personal and procedural, rather than substantive as had been done in

*Heckendorn.* (*Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 1077, 430 N.E.2d 236, 238-39; accord, *Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 969, 435 N.E.2d 221, 224 (doctrine of parent-child tort immunity held to constitute a substantive bar neither to action between parent and child nor to action by third party for contribution); *Farmers Insurance Group v. Nudi* (1982), 108 Ill. App. 3d 151, 153 (interspousal immunity "merely precludes enforcement of a remedy. Procedural immunity is personal to the spouse and does not inure to the benefit of third parties").) In my opinion, the trend represented by *Elkins, Wirth, Larson* and *Nudi* is entirely consistent with, and advances, the public policy of Illinois, which is to encourage lasting marital/family relationships, by removing legal disabilities which otherwise tend to place artificial burdens on the marriage contract and the family unit. In contrast to this consistent, modern trend, the majority herein, by blatantly refusing to acknowledge the authority of binding precedent, has achieved the following anomaly in this district: one spouse may recover from the other's automobile insurance company under an uninsured motorist clause when the insurance company attempts to assert interspousal immunity as a defense so long as the defendant-spouse personally does not (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 396 N.E.2d 528); however, one spouse may *not* recover from the other's insurance company under general coverage provisions when the insurance company asserts interspousal immunity as a defense to the injured spouse's cause of action even though the defendant spouse denies having personally authorized the use of such defense (the majority opinion in this case). The law should never tolerate such illogic.

Plaintiff's second contention in this appeal is that there exists a material and genuine question of fact as to whether defendant's counsel had a conflict of interests. It is clear in Illinois that where a conflict of interests exists between the insurer and the insured, the insurer has a duty to offer to decline to defend its insured. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451-52, 430 N.E.2d 1079, 1082 (citing *Thornton v. Paul* (1978), 74 Ill. 2d 132, 152, 384 N.E.2d 335, 343; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 198-99, 355 N.E.2d 24, 31).) "Instead of participating in the defense itself, the insurer must pay the costs of independent counsel for the insured." *Murphy v. Urso* (1981), 88 Ill. 2d 444, 452, 430 N.E.2d 1079, 1082.

In the present case, the insurer does not deny plaintiff's allegations that the counsel representing the defendant/husband in the trial court was selected by the insurer. It is obvious to me that in a normal harmonious marital relationship, one spouse's interest in the other

spouse's recovery of insurance funds to compensate for personal injuries would usually be at odds with the insurer's interest in avoiding paying claims filed against the insured. Since the trial court did not address Mrs. Williams' contentions that her husband had not waived his attorney's apparent conflict of interests after full and frank disclosure (see *Rogers v. Robson, Masters, Ryan, Brumund and Belom* (1979), 74 Ill. App. 3d 467, 392 N.E.2d 1365, *aff'd* (1980), 81 Ill. 2d 201, 407 N.E.2d 47), it appears without question that a material and genuine disputed question of fact on this issue was raised at the hearing and left unresolved as well.

On appeal, United Security, the insurer, also argues that, notwithstanding any conflict of interests or the supreme court's *Elkins* decision, the defendant is precluded from refusing his consent to assert an available defense to his wife's claim since the insurance policy contains a cooperation clause. Therefore, the insurer's argument continues, the issues raised at the hearing on defendant's motion to dismiss cannot constitute a material and genuine disputed question of fact. I disagree.

The majority summarily disposes of this issue by characterizing the instant lawsuit as a "collusive undertaking," and concluding that the issue before this court is a "sham issue" which "would appear to violate the cooperation clause of [Mr. Williams'] insurance contract." There is absolutely no factual evidence of lack of cooperation in the record before us. I am therefore constrained to treat the arguments respecting the operation of the cooperation clause in detail.

Before addressing those arguments however, I must comment on the majority's charge of "collusion." As I see it, the majority's remarks merely cloak their discontent with the supreme court's *Elkins* decision under the guise of a legislative mandate. The collusion argument does not withstand judicial scrutiny. I join those judges and courts which have rejected interspousal immunity as an antiquated doctrine which is totally at odds with contemporary society. They resoundingly discredit the collusion argument as a "slander to the integrity of our judicial system." *Guffy by and through Reeves v. Guffy* (1981), 230 Kan. 89, 111, 631 P.2d 646, 659 (Prager, J., dissenting, citing *Rupert v. Stienne* (1974), 90 Nev. 397, 528 P.2d 1013; *Richard v. Richard* (1973), 131 Vt. 98, 300 A.2d 637; *Freehe v. Freehe* (1972), 81 Wash. 2d 183, 500 P.2d 771; *Brooks v. Robinson* (1972), 259 Ind. 16, 284 N.E.2d 794; *Beaudette v. Frana* (1969), 285 Minn. 366, 173 N.W.2d 416.

Justice Prager, in the *Guffy* dissent, observed that:

"These courts unanimously agree that spurious and unmeritori-

ous claims are to be determined by the courts and the juries. Precluding all tort claims between spouses on this basis alone runs afoul of the general principle that an injured party should have redress in the courts against the party causing the injury, absent substantial, countervailing public policy reasons. See, e.g., *Digby v. Digby*, 388 A.2d at 4; *Lewis v. Lewis*, 370 Mass. 619, 351 N.E.2d 526." 230 Kan. 89, 111, 631 P.2d 646, 659.[1]

In *Coffindaffer v. Coffindaffer* (W. Va. 1978), 244 S.E.2d 338, 342-43, the court stated:

"There may be those desperate couples who would conclude that the prospect of a substantial monetary recovery is worth the pain of self-inflicted injuries. One can hardly imagine that the legal system will break down with cases brought by spouses who have flung themselves down the cellar steps or permitted the other spouse to strike them with the family car in order to achieve the type of substantial injury that makes jury litigation worthwhile."

While the majority opinion herein provides Black's definition of collusion, as aforesaid, my colleagues cannot refer to a shred of evidence in the instant case of an "evil purpose" or of any fraud being perpetrated against the insurer by Mr. and Mrs. Williams. Certainly it cannot be seriously contended that the relationship between Mr. and Mrs. Williams, by itself, without more, is sufficient to establish either collusion or a breach of the cooperation clause of Mr. Williams' insurance policy. (See *Patterson v. American Mutual Liability Insurance Co.* (D. Conn. 1969), 304 F. Supp. 1088, 1092; *Connell v. Indiana Insurance Co.* (4th Cir. 1964), 334 F.2d 993.) While I recognize that the possibility of collusion exists to a greater extent in the context of close family members (*Immer v. Risko* (1970), 56 N.J. 482, 490, 267 A.2d 481, 485), "we ought not to deny what should be due the many for fear that the judicial process cannot weed out the spurious claims of a few." *Cohen v. Kaminetsky* (1961), 36 N.J. 276, 283, 176 A.2d 483, 487.

---

[1] Accord, Comment, *Massachusetts Interspousal Immunity*, 16 N. Eng. L. Rev. 573, 591 (1981): "Concededly, there is a possibility of spurious claims in interspousal cases but, the mere threat of such suits should not bar *all* actions between spouses. If the courts were to close the door to all lawsuits which merely present a *possibility* of fraud or collusion, it is unlikely that many civil claims would get to court, particularly where insurance companies are involved. Moreover, the efficacy of the judicial process is supposed to ferret out the fraudulent claims from the meritorious ones. This is the very essence of the judicial function."

In my opinion, the judicial process is equal to the task of exposing most collusive/fraudulent claims. Several methods have been suggested for reducing the likelihood of success in such claims. (See Comment, *Massachusetts Interspousal Immunity,* 16 N. Eng. L. Rev. 573, 591 (1981).) For example in the instant case it is readily apparent that Mr. Williams, as the defendant-insured, is in a position adverse to that of his insurer. If and when this cause reaches the stage where the merits are considered, I see no reason why Mr. Williams might not be cross-examined by United Security as a hostile witness. His credibility would be thus subject to attack, and any collusion between him and Mrs. Williams could be exposed. In any event, it is a serious miscarriage of justice for this court to simply *assume* collusion based on the record here before us in this case.

The insurer's cooperation clause arguments are, in my opinion, also deserving of our serious consideration. The cooperation clause involved herein reads as follows:

> "The insured shall cooperate with the company and upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or loss with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

The insurer contends that if Mr. Williams waives the interspousal immunity defense, he would be breaching his contractual duty to not voluntarily make any *payment* at the insurer's expense. Certainly Mr. Williams has not promised or advanced any payment, and Mrs. Williams contends that the insurer's argument is a collateral issue not properly before this court. Because resolution of the issue could, if decided against the plaintiff, ultimately defeat the plaintiff's claim, I will consider it based on the record before us and in light of relevant case law.

Initially, I note that the cooperation clause does not specifically recite that the defendant himself must assert personal defenses not otherwise available to the insurer. Had the policy contained clear language to this effect, my resolution of this question, as a matter of contract law, would be to recognize generally the right of private par-

ties to contract away their legal rights. Such, however, is not the case before us, and the insurer has not directed this court's attention to any other provision in the policy which would tend to exclude a claim by the insured's spouse. Therefore, my analysis involves interpreting the cooperation clause of Mr. Williams' policy and giving effect thereto as written by the company. In *Elkins*, the court observed that "[i]n interpreting the provisions of an insurance policy the intent of the parties is the most significant factor and any ambiguity shall be construed in favor of the insured." (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 390-91, 396 N.E.2d 528, 531 (citing *Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11, 389 N.E.2d 1150).) The reasoning of the *Elkins* case convinces me that the general cooperation clause contained in the insurance policy herein should not be construed so as to impose on the insured a duty to assert a personal defense to avoid the claim filed by Mrs. Willams.

In *Jordan v. Standard Mutual Insurance Co.* (1964), 50 Ill. App. 2d 12, 199 N.E.2d 423, the court considered an automobile insurance policy containing a cooperation clause which the insurer invoked to avoid recovery by the minor child of a deceased insured. The deceased's wife served in the dual capacity as administrator of the insured's estate and as guardian of the minor child's estate. The court held that the conduct of the wife/mother in instigating a suit on behalf of the child against the deceased husband's estate did not breach the contractual duty owed by her to the insurer under the cooperation clause. The court considered several relevant cases from foreign jurisdictions before concluding that family relationships between the insured and the claimant, rendering the parties nonadversaries, did not necessarily mean that the insured failed to furnish proper assistance to the insurer, nor that the insured had entered into collusion with the plaintiff to establish liability unfairly. 50 Ill. App. 2d 12, 20, 199 N.E.2d 423, 427.

Similarly, in *American Policyholder's Insurance Co. v. Kiratsos* (1979), 119 N.H. 958, 409 A.2d 1346, the Supreme Court of New Hampshire ruled that the administratrix of the insured's estate, who also served as secretary to the administrator of the estate of the claimant, did not violate the insurance policy cooperation clause by exercising her legal right to waive a statutory 6-month waiting period before proceeding in an action against the estate. Such waiver permitted the claimant to proceed in a wrongful death action which would otherwise have been time-barred. Citing *Jordan*, the court stated that "[a] cooperation clause does not impose an obligation upon the insured to take an active role in defeating a claim, but only to 'assist' and 'co-

operate' with the insurer in its defense of a claim. \*\*\* [L]iability insurance is intended not only to indemnify the insured, but also to protect members of the public who may be injured through negligence [citation]. To burden the insured with an obligation to do everything in his power to defeat a legitimate claim would greatly weaken the practical usefulness of policies designed to afford public protection." 119 N.H. 958, 961-62, 409 A.2d 1346, 1348-49.

In the instant case, I believe it is legally permissible for the insured husband to waive the defense of interspousal immunity. (*Elkins*; *American Policyholder's Insurance Co. v. Kiratsos* (1979), 119 N.H. 958, 962, 409 A.2d 1346, 1348.) Should Mr. Williams ultimately elect to waive his defense, I believe this election, without more, would be insufficient evidence of a breach of his duty to cooperate with his insurer.

Having thus found that material and genuine questions of disputed facts, not obviated by the cooperation clause, were raised in the trial court, I return to section 48(3) of the Civil Practice Act to determine proper disposition of the defendant's motion to dismiss.

That section, the second sentence thereof, requires that if material and genuine questions of disputed fact are raised, *and* the action is at law, *and* the nonmoving party has demanded a trial by jury, then the trial court must deny the motion to dismiss without prejudice. *Greenstein v. Nogle* (1972), 5 Ill. App. 3d 594, 599, 283 N.E.2d 492, 496; Ill. Rev. Stat. 1979, ch. 110, par. 48(3).

Review of the record on appeal and the relevant law disclose that each of the conditions for denial of the defendant's motion without prejudice has been met.

Accordingly, I would reverse the order of dismissal entered by the circuit court and remand this cause for further proceedings.